# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## (BID PROTEST)

| | | |
|---|---|---|
| DISTRIBUTED SOLUTIONS, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STR, L.L.C., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 06-466 C |
| | ) | |
| v. | ) | (Judge Merow) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD AND MEMORANDUM IN SUPPORT

Plaintiffs, Distributed Solutions, Inc. ("DSI"), and STR, L.L.C. ("STR") (collectively the "Contractors"), file this Motion to Supplement the Administrative Record and Memorandum in Support. Contractors' Counsel has discussed this Motion with Government counsel, who advises that the Government is opposed to the Motion, in part as described below. In support of their Motion, the Contractors state as follows:

## Introduction

This bid protest concerns the Government's misuse of a lead systems integrator in violation of federal procurement laws and regulations. In their Complaint, the Contractors have alleged that the Agencies acted in an

arbitrary and capricious manner by, among other things, improperly delegating the inherently governmental function of procurement, improperly bundling the separate software procurements at issue, and failing to examine and identify the organizational conflicts of interest of its lead systems integrator chosen to assist in the evaluation and selection of the software systems at issue. In doing so, the Agencies chose to delegate their procurement authority to an integrator who is a competitor of the Contractors; not surprisingly, the integrator selected software provided by two offerors other than its competitors (the Contractors).

One selected offeror's Board of Directors includes a member, who is a former senior executive of the integrator; the other selected offeror is a Canadian company not even registered to do business in the United States, whose product did not meet the requirements of the procurements at issue. In addition, both software products selected require more integration services from SRA than would be required by use of the Contractors' products.

The result of the Agencies' decision to bundle the separate software packages at issue and to delegate its procurement authority to an integrator with organizational conflicts of interest is that the Contractors and other small businesses lost the opportunity to compete for two significant

software contracts. The Agencies' decision also saddled the Government with software that was not the most appropriate and did not represent the "best value."

The Contractors' allegations in their Complaint encompass the entire Request for Information ("RFI") process, beginning with the Government-issued First RFI and the Second RFI, issued by Systems Research and Applications Corporation, a wholly-owned subsidiary of SRA International, Inc. ("SRA"), as well as the "recommendations" resulting from the process. While there is some evidence in the record regarding the basis for the "recommendations," there are significant gaps in that record that require supplementation so that the Court can engage in a meaningful judicial review of the Contractors' protest. Those gaps fall into three general categories: (1) Typical procurement documents missing from the deliberations of the two procurements at issue; (2) Documents appended to or referenced in the Complaint; and (3) Documents regarding the procurement process that led to the Government delegating its procurement authority to SRA.

The first category of documents with which the record should be supplemented include typical procurement documents that are simply not included in the administrative record, as well as several documents that

were produced for one Contractor but not the other. The second category of documents that the Contractors request be added to the administrative record include declarations to support allegations in the Complaint, and miscellaneous documents referenced in allegations in the Complaint relating to the procurement process employed by the Government.

As for the third category, there is no evidence in the record concerning the decision of the Government to change its RFI process, insert SRA into that process, and forego the competitive procurement of the software packages at issue. Because this protest concerns the procurement process prior to the procurement decisions at issue, not just the procurement decisions themselves, there is a particular need to have a record of that process for the Court to review and evaluate. In the record as currently constituted, there is no information concerning the Agencies' decision to use SRA, despite the existing organizational conflicts of interest, to bundle the separate software packages for procurement by SRA, and to forego any competitive procurement of these software packages. Without supplementation of the administrative record, the Court cannot possibly conduct a meaningful record review of the claims set forth in the Complaint.

## Facts

The pertinent facts are set forth in the Complaint and the exhibits attached thereto. The following is a summary of those facts:

Background

STR is a small business software provider of, among other things, grants management software. On June 27, 2005, when the Government issued the First RFI, STR's software, as opposed to all other offerors, was already in production at the federal level – a key criterion of the RFI's at issue. DSI is a small business software provider of, among other things, acquisition management software. DSI was the incumbent small business software provider for USAID's current acquisition management software.

After each Contractor had responded to the First RFI, on August 12, 2005, the Agencies announced unexpectedly that they had "decided to pursue alternative courses of action," in selecting the software packages described in the First RFI. On that same day, SRA issued an ostensibly "commercial" RFI, which was remarkably similar to the First RFI. Both DSI and STR responded to the Second RFI and provided demonstrations of their respective software products.

In the Fall of 2005, DSI and STR were each notified that their respective software packages had not been selected for procurement.

Instead of STR's grants management software, SRA had apparently "recommended" that the Government purchase the software product offered by Infoterra, a Canadian company unlicensed to do business in the United States and with no product currently installed in a production environment. Similarly, instead of selecting the acquisition management software offered by DSI, SRA "recommended" CompuSearch, on whose Board of Directors sits a former high-ranking SRA official. Those "recommendations" resulted in contracts for Infoterra and CompuSearch without the use of any competitive measures to award those contracts.

<u>The Administrative Record Relating To STR</u>

In the course of STR's protest before the Government Accountability Office ("GAO"), USAID supplied a few selected documents from the "recommendation" process that resulted in the procurement of Infoterra's software product. AR 167-220. However, one of those documents, entitled "Assistance Demonstration Scorecard," is blank. AR 216-220. Also, while there is information as to the initial "recommendation" of Infoterra's product, there is no information involving the final decision to accept the "recommendation" and to purchase the recommended product. For example, the "recommendation" is contained in a powerpoint presentation

provided by the Source Selection Evaluation Team ("SSET"), and presented to the Source Selection Authority ("SSA"). AR 204-214.

The current administrative record contains no documents regarding the deliberations/decision of the SSA and only limited information of the work of the SSET. In other words, there is a gap in the documentation from the "recommendation" to the resulting contract with Infoterra, which was produced for the first time in the administrative record recently filed with the Court. In addition, USAID supplied several declarations of USAID and SRA personnel involved in the "recommendation" process, suggesting that SRA played a dominant role in the resulting "recommendation" of Infoterra. AR 123-126; 167-176. However, some of the documents provided by USAID, namely the functional summary of the SSET, dated September 19, 2005, AR 198-202, as well as statements in several declarations, indicated that USAID personnel, not SRA, made the "recommendation" decision. AR 167-176.

Finally, USAID did not provide at GAO, and the Government has not included in the administrative record, any evidence of the scoring of STR or any other vendor's product and has not provided the proposals submitted by each vendor, which may bear upon the validity of SRA's "recommendation" to select Infoterra's product.

<u>The Administrative Record Relating To DSI</u>

In the GAO protest of DSI, USAID submitted no documents before GAO dismissed the protest on jurisdictional grounds. However, in the current administrative record, the Government has added a few additional documents, all of which pertain to DSI (other than a copy of the contract with Infoterra). AR 736-757.

One of the new documents provided is an “Internal Recommendation Memorandum,” presented by the SSET to the SSA. AR 736-753. However, there are no subsequent documents regarding the ultimate decision to procure the CompuSearch product, other than the contract with CompuSearch. In fact, the Internal Recommendation Memorandum’s signature lines for the SSA representatives to signify approval of the “recommendation” are blank. AR 749. The only other “new” document contained in the administrative record is a “Vendor Findings Worksheet,” which appears to be a summary of comments regarding DSI’s software package. AR 754-757. Just as with the documents pertaining to STR, there is no individual rating/scoring information and no information regarding the analysis of any other offeror against which to compare the reasonableness and propriety of the SSET’s comments and ultimate

"recommendation" of CompuSearch's product. That information also bears upon SRA's role in the procurement process.

The Deficiencies in the Current Administrative Record

All told, other than the record compiled through the GAO protests, the administrative record, as presented by the Government, contains only an additional 116 pages of documents, all but 21 pages of which are the two contracts with Infoterra and CompuSearch. AR 641-757. There are no documents relating to the Agencies' decision to discard the RFI process in favor of allowing SRA to carry the process forward, no documents reflecting SRA's role or responsibilities in the RFI process, no documents relating to any organizational conflict of interest analysis, or bundling analysis regarding the decision to procure the two separate software packages as part of one process, no documents to explain the relative ranking/scoring decisions of the offerors that lead to the "recommendations" at issue, and no documents in between the "recommendations" and the final contracts with Infoterra and CompuSearch.

In June 2006, counsel for the Contractors' sent an email to Government counsel listing the following documents and information not contained in the administrative record:

1. There is no explanation of the procurement strategy or the type of procurement method utilized (sole source, simplified acquisition, negotiated procurement, etc.).

2. There are no documents and no explanation/analysis regarding the decision-making process that led to the insertion of SRA into the selection process (cancellation of the First RFI and issuance of the Second RFI) and no documents/information regarding the decision to use SRA as the procurement agent per the task order under which SRA is allegedly operating in selecting the software at issue.

3. There are no documents/information regarding the decision to have SRA select both software packages at issue, rather than procure them separately.

4. There is no scoring information for either STR or for DSI. Additionally, there is no weighting or guidelines that would allow understanding of how any scoring and/or relative ranking was conducted and/or calculated.

5. Other than a "recommendation" from the source selection team, there is no final "decision" implementing the "recommendation." Also, there is no "Internal Recommendation Memorandum" or "Vendor Findings Worksheet" regarding the "recommendation" of Infoterra, but both are provided for the "recommendation" of Compusearch. Similarly, there is a powerpoint "recommendation" presentation and a functional summary product evaluation provided for Infoterra, but not for Compusearch.

6. There are no communications (emails, written correspondence, telephone notes, meeting notes, etc.), showing any discussions between USAID and SRA, or among the agencies involved in the procurements at issue).

7. The relative roles of SRA and of the Government in the procurement process are unclear.

8. It is unclear whether appropriated funds were used for the procurements at issue.

Exhibit 1. The Government has indicated that it is willing to provide some unspecified documents relating to the "recommendations," including some from SRA, it did not have any further documents after the "recommendation" decisions and, more importantly, did not believe that it had any of the procurement process documents to explain how the Government decided to delegate procurement authority to SRA and what role SRA actually played in the procurement process. Although the Contractors appreciate the willingness of the Government to provide additional procurement decision documents, there are still other documents/information needed so that the Court can engage in a meaningful review of all of the issues in the Contractor's Complaint.

## **Argument**

### I. Statement of Applicable Law

In *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 350 (Fed. Cl. 1997), the United States Court of Federal Claims summarized the difficulty faced in reviewing a procurement decision on the administrative record:

> As a practical matter, . . . in most bid protests, the "administrative record" is something of a fiction, and certainly cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review. This is true in the contract award context if for no other reason than that, due to the absence of a formal record, the agency has to exercise some judgment in furnishing the court with the relevant documents. In order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence, and possibly limited discovery, aimed at determining, for example, whether other materials were considered, or whether the record provides an adequate explanation to the protester or the court as to the basis of the agency action. It follows that discovery as well as the breadth of the court's review has to be tailored in each case.

Id.; see also Orion Int'l Techs. v. United States, 60 Fed. Cl. 338, 342 (Fed. Cl. 2004) ("In all but exceptional cases, the evidence in cases challenging *formal* agency rulemaking brought under the [APA] is limited to materials contained in the administrative record. . . . The record produced during a formal adjudication or rulemaking, however, is different from a record of an informal agency decision. In the case of an informal administrative decision, such as the award of a contract, the administrative record is merely 'a convenient vehicle for bringing the decision of an administrative body before a reviewing agency or a court.'" (internal citations & footnotes omitted)). Accordingly, the United States Court of Federal Claims court does not "'apply an iron-clad rule automatically limiting its review to the

administrative record.'" United Enter. & Assocs. v. United States, 70 Fed. Cl. 1, 18 (Fed. Cl. 2006) (quoting Graphic Data, LLC v. United States, 37 Fed. Cl. 771, 779 (Fed. Cl. 1997)).

Supplementing the administrative record is appropriate where the record does not contain sufficient information for the court to render a decision. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338-39 (Fed. Cir. 2001) ("[E]ven if the agency is not obligated to provide reasons, a court may nonetheless order the agency to provide explanation if such an explanation is required for meaningful judicial review."); see also Precision Standard, Inc. v. United States, 69 Fed. Cl. 738, 745 (Fed. Cl. 2006) ("In particular, the court will supplement the administrative record to fill gaps concerning the factors the contracting officer considered in reaching his decision."); Asia Pac. Airlines v. United States, 68 Fed. Cl. 8, 18 (Fed. Cl.2005) ("Gaps in the administrative record may exist largely because of the informal nature of the agency's action. When an explanation of a contracting officer's decision is required for meaningful judicial review, a reviewing court has the power, and sometimes the obligation, to require such an explanation.").

Decisions of the United States Court of Federal Claims have identified the threshold inquiry as whether an agency's action before the

court is susceptible to a "record review." See United Enter., 70 Fed. Cl. at 18. In addition to allowing supplementation of the administrative record when necessary to help explain an agency's decision, this Court has also allowed the record to be supplemented with information that would not normally be expected to be part of any written record, such as the content of conversations or actions beyond the actual procurement decision at issue. See Orion, 60 Fed. Cl. at 343-44; Int'l Resource Recovery, Inc. v. United States, 59 Fed. Cl. 537, 542-43 (Fed. Cl. 2004). This supplementation can include both discovery and depositions. Int'l Resource Recovery, 59 Fed. Cl. at 542 and cases cited therein.

The Court has also permitted supplementation, even though the GAO has developed an extensive record, when necessary to resolve issues not addressed by the GAO proceeding. Chapman Law Firm Co. v. United States, 2006 U.S. Claims LEXIS 145, *6-*8 (June 6, 2006). For example, in Chapman, this Court noted that, although the Government had filed a 17-volume administrative record, less than 160 pages addressed events that had occurred since the GAO proceeding, including an amended complaint filed by the plaintiff containing allegations and issues not addressed during the GAO proceeding. Id.

## II. Supplementation of the Record is Necessary to Allow the Court to Conduct a Meaningful Review of the Administrative Record

The bulk of the record, as currently constituted, consists of little more than the record developed during the GAO protests. Both of those protests were resolved on jurisdictional grounds, so the records of those proceedings provide limited documents/information concerning the merits of the procurement decisions at issue. In the STR protest before GAO, USAID submitted a handful of documents and several declarations regarding SRA's role in the procurement, as opposed to the procurement decision itself. USAID provided no such documents in the DSI protest before GAO.

In its submission of the administrative record to this Court, the Government has added a mere 116 pages of documents beyond the GAO records, all but 21 pages of which are the two contracts with Infoterra and CompuSearch regarding the software packages at issue. AR 641-757. The only other documents provided related to DSI's offer -- a Vendor Findings Worksheet and an Internal Recommendation Memorandum from the SSET, requesting approval of its "recommendation" to purchase the CompuSearch software. AR 736-757.

Each of the categories of documents/information identified in this Motion address significant gaps in the currently constituted administrative

record. The first category of documents involves typical procurement documents that have not been included in the record. Those documents include rating/scoring information regarding the products and demonstrations of DSI, STR, and all other offerors, the reasons or rationale supporting the "recommendations," and evidence to support the final decision to procure the software packages at issue. This information is critical not only to allow the Court to review the validity of the "recommendations" themselves, but also to allow the Court to assess SRA's role in the process and whether that role comported with the Government's proper exercise of authority and was in accordance with federal regulations and requirements.

The remaining two categories of documents/information that the Contractors are requesting for supplementation of the record both address the procurement process that led to SRA's allegedly prominent role in the two procurements at issue. First, the proffered declarations are necessary to support certain allegations in the Complaint and to combat information provided by USAID during the GAO protests. Since the GAO record, all of which has been designated by the Government as part of the administrative record, contains declarations from both the Contractors and the Government, there is no reason not to include the additional

declarations offered by the Contractors. See Int'l Resource Recovery, 59 Fed. Cl. at 542 (evidence offered during GAO proceeding does not foreclose the submission of additional evidence to supplement the administrative record before this Court). This is particularly true in this case, since the GAO proceedings did not reach the merits; had they done so, the information in the proffered declarations would have been part of the GAO record and, necessarily would have already been made a part of the administrative record by the Government.

The key documents/information necessary for the Court to conduct a meaningful review of the administrative record concern the entire procurement process and the Government's decision to involve SRA in that process. Instead of issuing an RFP or RFQ to procure the separate software packages at issue, as is the normal practice, the Government chose to insert SRA into the procurement process, and, allegedly, to allow SRA to handle the procurements. Based on the Government's assertions during the GAO proceedings, several issues have been raised that cannot be answered or even examined based on the current state of the administrative record. First, there is no information in the record as to why the Government decided to change course and use SRA's services, instead of the usual method of directly procuring software and integration

services from the qualified vendors which responded to the First RFI. The only information related to this issue is an excerpt from SRA's Statement of Work and declarations vaguely stating that it was determined that SRA should be utilized to procure the software packages at issue. AR 170, 175, 178-191. That scant evidence is insufficient for the Court to determine the Government's reason for deciding to use SRA in the procurement process.

Second, there is no information in the record to substantiate that the Government performed the required analyses to ensure proper performance by SRA, including an analysis of any potential organizational conflict of interest and any bundling of the two separate software packages ostensibly procured by SRA. These issues were not addressed at the GAO. As a result, there is no information in the record as to whether any such analyses were ever performed and, if so, the results of those analyses. This is of particular concern in this case, given SRA's organizational conflicts of interest, and given that bundling the procurements at issue was unnecessary. Each Contractor was capable of providing integration services, evidenced by the fact that DSI is currently providing such services to USAID. Instead, the Government's use of SRA resulted in "recommended" offerors that favored SRA's own interests and

the exclusion of small businesses, including the Contractors, from the opportunity to compete for the separate procurements at issue.

Third, having selected SRA to play a role in the JAAMS procurement process, the precise nature and boundaries of SRA's role is unclear. Although, in the GAO protests, USAID asserted that it had a limited role in the procurement process, the few documents included in the administrative record seem to suggest otherwise. For example, the SSET was comprised entirely of Government personnel; SRA provided only technical assistance. AR 198-202. Government personnel supported this division of responsibility. See AR 149-151; 155-156. Yet, USAID submitted declarations containing the unsupported assertion that SRA handled the bulk of the procurement process. AR 167-176. Under these circumstances, a blanket statement in a declaration should not suffice to establish SRA's role and does not provide sufficient detail regarding that role. Thus, further information is necessary.

As noted earlier, the administrative record currently contains little information beyond the GAO record. However, the allegations in the Complaint address issues, including the organizational conflicts of interest and the lack of any bundling analysis that, while raised at GAO, were not addressed by USAID and were not a part of GAO's decision. Under similar

circumstances, the Court has permitted supplementation of the record beyond the record developed before the GAO. See Chapman, 2006 U.S. Claims LEXIS 145 at *6-*8.

Such supplementation is critical to a meaningful review of the crux of the Contractors' Complaint – the Government's decision to use SRA to privatize the procurement process. Since the role and decision-making of SRA has been placed in issue, the Contractors and the Court need information regarding SRA's role and specific contributions/analyses provided as to STR's and DSI's software packages, as well as any comparison made to the other offerors to assess whether SRA may have influenced the "recommendation" toward those entities for invalid reasons, which bears upon the Contractors' claims of organizational conflicts of interest, improper delegation of authority, and improper use of a task order. In the current record, there is no evidence of a single communication between SRA and the Government and not a single email of any kind.

## III. Specific Requests for Supplementation of the Administrative Record

Based on the foregoing reasons, the Contractors have attempted to catalog the documents and information needed to allow the Court to conduct a meaningful record review. In addition to the outline of documents/information requested in counsel for the Contractors' email to

Government counsel, Exhibit 1, the Contractors request that the following documents/information be added to the administrative record:

1. Documents referenced in the Complaint and attached to this Motion as Exhibit 2 - 4: Declaration of Dean Moore, Supplemental Declaration of Robert J. Fries, and CompuSearch information from company website.

2. SRA's Millenia Contract and the particular task order, as well as any task order modifications, issued to SRA that describes the JAAMS project, SRA's duties and responsibilities, and/or requirements for the analysis, evaluation, recommendation, funding, and purchase of software systems for the Agencies.

3. Correspondence, memoranda, notes, emails, and other similar documents from SRA and/or the Government regarding SRA's role/responsibilities in the JAAMS procurement process.

4. Correspondence, memoranda, notes, emails, and other similar documents from SRA and/or the Government regarding the analysis, evaluation, vendor demonstrations, recommendation, funding, and purchase of the two products at issue.

5. Correspondence, memoranda, notes, emails, and other similar documents from SRA and/or the Government regarding the analysis, evaluation and vendor demonstrations of STR's and DSI's software packages, as well as those of all other offerors' submissions.

6. Correspondence, memoranda, notes, emails, and other similar documents from the Government regarding any analysis of potential organizational conflicts of interest relating to the use of SRA in the JAAMS procurement process.

7. Correspondence, memoranda, notes, emails, and other similar documents from the Government regarding the decision to bundle the procurement of grants management software and acquisition assistance software as was done by SRA in the JAAMS procurement process at issue.

8. Correspondence, memoranda, notes, emails, and other similar documents from SRA and/or the Government regarding the decisionmaking and/or any actions taken by the SSET and the SSA during the two procurements at issue.[1]

The Government has already indicated that it will provide additional documentation concerning the procurement decisions themselves, including documents from SRA, which should encompass paragraphs 1, 3, 4, and 7, to the extent they exist. However, because those documents have not yet been provided and to avoid any argument or ambiguity as to the particular documents to be provided, the Contractors request that the Court order that the Government provide the documents listed in this Motion, to the extent they exist.[2]

---

[1] Reference to the Government in this list of documents includes, but is not limited to, USAID, State, and the Federal Systems Integration and Management Center ("FEDSIM").

[2] Although the Government should be able to obtain responsive SRA documents, if necessary, the Contractors request the right to serve discovery requests on SRA to obtain the requested categories of documents directly.

In addition to the requested documents and information, particularly with regard to the decision to utilize SRA to facilitate the procurement process and to act as the procuring agent, there are likely no documents to explain that decision. Thus, the only way to obtain such information would be through deposition testimony of key Government and SRA personnel. Depositions have often been permitted as a means of supplementing the record. Int'l Resource Recovery, 59 Fed. Cl. at 542 and the cases cited therein. That is particularly important in this case, because there are likely no documents that will inform the Court of the Government's conduct of the procurement process, from the decision to issue the First RFI through its participation in the "recommendations" and ultimate purchase of the software packages at issue. Thus, the Contractors request that they be allowed to depose the following individuals:

Mosina H. Jordan (SSA; Counselor to USAID)

Michael Walsh (Source Selection Advisor)

Mercedes Eugenia (SSET Chair)

Tish Tucker, Director, USAID Program Management Office

Linh T. Lam, USAID Procurement Analyst

Kakali Banerjee, SRA Project Manager

The Contractors will make any reasonable accommodations to minimize the impact to the listed individuals and will expedite the process so as to ensure a timely resolution of this bid protest.

## Conclusion

For the reasons set forth herein, the plaintiffs, DSI and STR, respectfully request that the Court grant their Motion to Supplement the Administrative Record, require the Government to provide all requested documents and allow the plaintiffs' to conduct limited discovery to obtain other information requested but not set forth in any documents, and provide the plaintiffs with all other relief to which they are justly entitled.

DISTRIBUTED SOLUTIONS, INC.
and STR, L.L.C.

By: s/Thomas A. Coulter
Counsel

Dated: August 4, 2006

Thomas A. Coulter (Virginia State Bar No. 46532)
(D.C. Bar No. 436423)
LeCLAIR RYAN, a Professional Corporation
951 East Byrd Street
Richmond, Virginia 23219
Mail: P.O. Box 2499
Richmond, Virginia 23218
Telephone: (804) 916-7103
Facsimile: (804) 916-7203
Email: thomas.coulter@leclairryan.com