No. 06-467C
(Judge Merow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DISTRIBUTED SOLUTIONS INC.,

and

STR, L.L.C.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

KENT G. HUNTINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. No.: (202) 353-9369
Fax No.: (202) 353-7988

OF COUNSEL:
WARREN D. LEISHMAN
PETER YOUNG
USAID
Office of General Counsel
Ronald Reagan Building
Room 6.6.064
1300 Pennsylvania Ave., N.W.
Washington, D.C. 20523
Tel. No.: (202) 712-5019

August 18, 2006

Attorneys For Defendant

**TABLE OF CONTENTS**

**PAGE(S)**

DEFENDANT'S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD ..... 1

ISSUES PRESENTED ..... 2

STATEMENT OF THE CASE ..... 3

I. Nature of the Case ..... 3

II. Statement of the Facts ..... 4

ARGUMENT ..... 8

I. The Standard of Review ..... 8

II. The Court's Bid Protest Jurisdiction Is Limited By Statute ..... 9

III. SRA Is Not A "Federal Agency" Pursuant To Section 1491(b)(1) And, Therefore, This Protest Should Be Dismissed ..... 10

IV. The Subcontracts Make Plain That The Subcontractors Have No Privity Of Contract With The Government And, Therefore, Privity Cannot Be Established To Invoke Jurisdiction ..... 11

V. SRA Cannot Be Construed To Be The Government's Agent For Purposes Of Invoking The Court's Protest Jurisdiction ..... 14

VI. This Court Does Not Possess Jurisdiction To Consider Plaintiffs' Apparent Challenge To USAID's Task Order With SRA And Plaintiffs Do Not Otherwise Have Standing To Make Such A Challenge ..... 20

VII. The Court Does Not Possess Jurisdiction To Entertain This Bid Protest And The Existing Agency Record Is Sufficient To Establish That The Complaint Should Be Dismissed ..... 23

CONCLUSION ..... 28

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

A&D Fire Protection, Inc. v. United States,
No. 06-467C (Fed. Cl. August 10, 2006) .................. 21

Advance Constr. Servs, v. United States,
51 Fed. Cl. 362 (2002) ............................ 10, 11

Aetna Cas. & Sur. Co. v. United States,
228 Ct. Cl. 655 F.2d 1047 (1981) ......................... 9

Asia Pac. Airlines v. U.S.,
68 Fed. Cl. 8 (2005) .................................... 25

Bell BCI Co. v. United States,
56 Fed. Cl. 465 (2003) .................................. 11

Blue Water Envtl., Inc. v. United States,
60 Fed. Cl. 48 (2004) ........................... 14, 15, 16

Bolin v. United States,
221 Ct. Cl. 947 (1979) .................................. 12

C.A.C.I., Inc.-Federal v. United States,
719 F.2d 1567 (Fed. Cir. 1983) .......................... 26

Camp v. Pitts,
411 U.S. 138 (1973) ..................................... 24

Citizens to Preserve Overton Park, Inc. v. Volpe,
401 U.S. 402 (1971) ..................................... 26

Cubic Applications, Inc. v. United States,
37 Fed. Cl. 339 (1997) .................................. 25

Deponte Invs., Inc. v. United States,
54 Fed. Cl. 112 (2002) .................................. 23

DeRoche v. Unites States,
2 Cl. Ct. 809 (1983) .................................... 11

Doraiswamy v. Secretary of Labor,
555 F.2d 832 (D.C. Cir. 1976) .......................... 25

Eagle Design & Management, Inc. v. United States,
62 Fed. Cl. 106 (2004) ................................ 22

Emery Worldwide Airlines, Inc. v. United States,
264 F.3d 1071 (Fed. Cir. 2001) ........................ 14

Erickson Air Crane Co. v. United States,
731 F.2d 810 (Fed. Cir. 1984) ......................... 12

Erikson v. United States,
12 Cl. Ct. 754 (1987) ................................. 12

Etchey v. United States,
15 Cl. Ct. 152(1988) .................................. 12

Eubanks v. United States,
25 Cl. Ct. 131(1992) .................................. 12

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir.) .............................. 9

Florida Power & Light v. Lorion,
470 U.S. 729 (1985) ................................... 24

Galen Medical Associates, Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004) ........................ 26

Gentex Corp. v. United States,
61 Fed. Cl. 49 (2004) ................................. 22

Globex Corp. v. United States,
54 Fed. Cl. 343 (2002) ................................ 16

Group Seven Assocs., LLC v. United States,
68 Fed. Cl. 28 (2005) ................................. 21

Hambsch v. United States,
857 F.2d 763 (Fed. Cir. 1988) ......................... 23

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) .................... 25, 26

Lockheed Martin Corp. v. United States,
50 Fed. Cl. 550 (2001) .............................. 16, 18

McCauley v. United States,
38 Fed. Cl. 250 (1997) .................................. 8

Merritt v. United States,
267 U.S. 338 (1925) .................................... 12

National Leased Housing Assoc. v. United States,
32 Fed. Cl. 454 (1994) ................................. 14

Rocovich v. United States,
933 F.2d 991 (Fed. Cir. 1991) ........................... 9

Scheuer v. Rhodes,
416 U.S. 232 (1974) ..................................... 8

Steel Co. v. Citizens for a Better Env't,
523 U.S. 83 (1998) ..................................... 23

US West Comm. Servs., Inc. v. United States,
940 F.2d 622 (Fed. Cir. 1991) .......................... 15

United Pacific Ins. Co. v. United States,
26 Cl. Ct. 773 (1992) .................................. 12

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed. Cir. 1983) .............. 15, 16, 18, 19

United States v. King,
395 U.S. 1 (1969) ....................................... 9

United States v. Mitchell,
445 U.S. 535 (1980) ..................................... 9

United States v. Sherwood,
312 U.S. 584 (1941) ..................................... 9

United States v. Testan,
424 U.S. 392 (1976) ..................................... 9

Vermont Yankee Nuclear Power Corp. v.
Natural Resources Defense Council, Inc.,
435 U.S. 519 (1978) .................................... 24

Waste Management of North American, Inc. v. Weinberger,
862 F.2d 1393 (9th Cir. 1988) ........................... 22

**STATUTES AND REGULATIONS**

4 C.F.R. § 21.5(A) ........................................ 21

5 U.S.C. § 702 ............................................ 24

5 U.S.C. § 706(2) ......................................... 24

28 U.S.C. § 451 ....................................... 14, 15

28 U.S.C. § 1491(b)(1) ................................. passim

28 U.S.C. § 1491 ........................................... 9

31 U.S.C. § 2304(a)(1)(A) ................................. 20

31 U.S.C. § 3551(2) ....................................... 22

41 U.S.C. § 253j(d) ....................................... 21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| DISTRIBUTED SOLUTIONS INC., and STR, L.L.C., Plaintiffs, v. UNITED STATES, Defendant. | ) | No. 06-466C (Judge Merow) |

DEFENDANT’S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS’ MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Additionally, because the Court does not possess jurisdiction to rule upon the matters alleged in the complaint, we respectfully oppose plaintiffs’ request to supplement the administrative record. In support of our motion, we rely upon the complaint filed by plaintiffs, Distributed Solutions, Inc.(“DSI”) and STR, L.L.C. (“STR”), the administrative record filed in this case, and the following brief.

## ISSUES PRESENTED

1. Whether the Court possesses jurisdiction to entertain DSI and STR’s bid protest pursuant to 28 U.S.C. § 1491(b)(1), where the protested procurement was conducted by a private Government contractor that is not a Federal agency.

2. Whether there exists privity of contract between the awarded subcontracts and the Government, such that DSI and STR can maintain an action in this Court as nothing more than disappointed offerors on a procurement conducted by a private contractor.

3. Whether the relevant private contractor, SRA International, Inc. (“SRA”), acted as the Government’s agent for purposes of invoking this Court’s bid protest jurisdiction.

4. Whether it is appropriate for DSI and STR to use this protest as a vehicle to challenge the award of a task order to SRA when the Court does not possess jurisdiction to entertain such a challenge and the plaintiffs otherwise lack standing.

5. Whether additional supplementation of the record is appropriate where the Court does not possess jurisdiction to entertain the complaint and the plaintiffs have failed to identify any evidence for the Court to conclude otherwise.

## STATEMENT OF THE CASE

### I. Nature of the Case

DSI and STR were losing offerors on competitive subcontract procurements conducted by SRA. SRA is a private contractor that has a task order with the United States Agency for International Development ("USAID") under a prime contract with the General Services Administration. DSI and STR have twice protested SRA's subcontracting decisions with the Government Accountability Office ("GAO"), and twice lost because the GAO determined that neither DSI nor STR were involved in Government procurements. Likewise, neither DSI nor STR should be permitted to pursue this bid protest because the underlying subcontracts that they protest are not Government procurements, and because there does not exist privity of contract between the Government and the awarded subcontracts such that this action may be maintained. Here, there exists no Government procurement upon which DSI and STR can invoke the jurisdiction of this Court. Additionally, by statute, this Court does not possess jurisdiction to consider DSI and STR's apparent attempt to challenge that task order awarded to SRA, and the plaintiffs do not otherwise have standing to do so. Here, the administrative record provides ample basis upon which the Court should conclude that the complaint should be dismissed.

## II. Statement of the Facts

USAID and the Department of State ("State") initiated the Joint Assistance and Acquisition Management System ("JAAMS") program to improve strategic planning and coordination between the two Federal agencies. JAAMS was developed by the agencies to create a common computer platform for acquisition and assistance systems for the agencies and to support the agencies' coordinated financial processes. AR[1] 168. It was contemplated that this common platform would allow greater cooperation between the agencies and better management of the Government's foreign assistance responsibilities. With respect to the implementation of JAAMS, USAID was designated as the lead agency for this collaborative agency effort. AR 125.

In 2003, USAID issued a task order to SRA for systems integration support services under the General Services Administration ("GSA") FEDSIM contract. AR 178-91. This task order, known as the Principal Resource Information Management Enterprise-wide ("PRIME 2.2") task order, required SRA to provide USAID with the design, implementation and support of its computer systems modernization efforts, including its Acquisition and Assistance ("A&A") system efforts. The first strategic objective of PRIME 2.2 called for the general upgrade of information

---

1 "AR __" refers to the administrative record filed in this matter.

technology ("IT") infrastructure. AR 186. That work is not at issue in this litigation. The second strategic objective of PRIME 2.2 called for SRA: (1) to support USAID's A&A mission for contracts and grants awarded world-wide; (2) to integrate commercial-off-the-shelf computer packages, also known as "COTS," from various vendors; and (3) to integrate those A&A systems into USAID's and State's accounting systems. AR 186. SRA was also required to assure the agencies that the computer systems selected complied with other important e-government requirements, e.g., the Federal Procurement Data System. AR 186.

During the JAAMS acquisition strategy phase, SRA assisted USAID in developing a Request for Information ("RFI") that was issued in June 2005. AR 15. The RFI sought separate software solutions for the JAAMS and Procurement System Improvement Project ("PSIP") programs. The RFI served as "market research to determine if existing [commercial-off-the-shelf] A&A systems or combinations thereof can satisfy [the Government's] requirements and provide the necessary functionality that would better enable USAID and State to deliver acquisition assistance to support both organizations' missions, operations, and reporting requirements." AR 16.

Various acquisition alternatives were considered for procurement of the JAAMS commercial off the shelf solutions, but the submissions convinced USAID that the JAAMS effort should be

divided into two distinct tasks: (1) the PSIP program, which would be developed for only the USAID contracts system; and (2) the Joint Assistance Management System ("JAMS") program, which would be developed for a new grants management system for both USAID and State. AR 174-75. In addition, USAID concluded that

> based on the complex business and technical environment, SRA, the current PRIME 2.2 systems integrator, would be used to integrate the four primary Acquisition and Assistance functions . . . . The government does not have the in-house capacity, technical expertise or resources to perform all of these integrations, therefore, [it] must rely on contractor support to implement the JAAMS program.

AR 170; see also AR 175. Thus, the Government decided to use the systems integrator that had been awarded the PRIME 2.2 task order, i.e., SRA, to perform tasks it had been awarded. SRA would then be responsible for delivering the set of tools that met the requirements outlined in the functional architecture of the agencies' computer systems and for integrating the selected tools into the agencies' computer systems. AR 169.

SRA has been held responsible for executing the tasks required under the PRIME 2.2 task order. In this regard, the over-arching task has been the full integration of the JAMS and PSIP systems into the agencies' respective IT infrastructure. To achieve this result, SRA has been "frequently required to select products to support IT modernization efforts. These products

range from hardware solutions (servers, routers, firewalls, etc.) to service providers (telecommunications providers, maintenance providers, etc.) to software solutions (lifecycle management tools, operating systems, databases, identity management solutions etc.)." AR 123. Accordingly, SRA's role as a computer systems integrator extends far beyond the two commercial-off-the-shelf software solutions that form the basis of this protest.

To accomplish the work tasked by USAID, SRA issued a new RFI on August 12, 2005. AR 30. Unlike the prior, Government-issued RFI, the new RFI contained detailed evaluation factors that SRA would use to evaluate potential subcontractors according to standard SRA practices. AR 175. SRA led a Source Selection Evaluation Team ("SSET") consisting of nine SRA employees, six representatives from USAID, and six representatives from State. After the evaluations, the SSET recommended that Infoterra and Compusearch Software receive the JAMS and PSIP subcontracts, respectively. AR 615, 736. After receiving the Government's concurrence, SRA began negotiations with the selected vendors, and it entered into direct subcontracts with both companies. AR 641-735. The Government is not a party to either of these subcontracts and only SRA has privity of contract with the subcontractors. AR 691. Indeed, SRA alone is able to direct the subcontractors' activities and manage their work. AR 647, 709 ("only SRA is authorized to direct the subcontractor with respect

to the obligations, responsibilities, terms, and conditions of the subcontract awarded”).

Shortly after SRA provided notice to the unsuccessful subcontractor offerors, STR protested the Infoterra subcontract to the GAO and DSI protested the Compusearch subcontract to the GAO. On December 22, 2005, the GAO dismissed STR’s protest, ruling that, because “the procurement here was not ‘by’ the [G]overnment,” it lacked jurisdiction to entertain STR’s protest. AR 242. On January 25, 2006, the GAO also dismissed DSI’s protest. The GAO explained that “because the procurement at issue was not conducted by a [F]ederal agency or a contractor acting as a procurement agent for a [F]ederal agency . . . [it] is not subject to our jurisdiction.” AR 282. Approximately five months later, DSI and STR filed this bid protest.

## ARGUMENT

### I. The Standard of Review

"In passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter [RCFC 12(b)(1)] or for failure to state a claim [RCFC 12(b)(6)], the allegations of the complaint should be construed favorably to the pleader." McCauley v. United States, 38 Fed. Cl. 250, 262-63 (1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). However, "conclusory allegations unsupported by factual assertions will not withstand a motion to dismiss." Id. (citation omitted). The

ultimate burden of establishing jurisdiction is on the plaintiff. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

II. The Court's Bid Protest Jurisdiction Is Limited By Statute

It is well-established that this Court's jurisdiction is limited. United States v. Testan, 424 U.S. 392, 399 (1976). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. Id.; United States v. Sherwood, 312 U.S. 584, 586 (1941). Congressional consent to suit in this Court, which waives the Government's traditional immunity, must be explicit and strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980); Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir.); see also Testan, 424 U.S. at 399 (waiver of sovereign immunity cannot be implied); United States v. King, 395 U.S. 1, 4 (1969) (same).

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Cas. & Sur. Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Pursuant to this statute, an action in this Court must be "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (emphasis added). Additionally, 28

U.S.C. § 1491(b)(1) explicitly requires that, to maintain a bid protest in this Court, the protested solicitation must have been conducted by a Federal agency. Id. Accordingly, to maintain a bid protest in this Court, a plaintiff must have competed in a Government-sponsored solicitation, which was issued by a Federal agency and not a private party.

## III. SRA Is Not A "Federal Agency" Pursuant To Section 1491(b)(1) And, Therefore, This Protest Should Be Dismissed

In their complaint, DSI and STR make plain that they were the disappointed offerors on a private procurement conducted by SRA, Compl. ¶ 17-24, and that they decided to protest their non-selections after being advised by SRA that it had selected other subcontractors. Compl. ¶ 25-26. They allege that the Court possesses jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1491(b)(1) because they “are, among other things, objecting to the award of contracts.” Compl. ¶ 5.

However, 28 U.S.C. § 1491(b)(1) provides that this Court

> shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

Id. (emphasis added). In this regard, the Tucker Act "limits this Court's bid protest jurisdiction to a review of agency decisions." Advance Constr. Servs, v. United States, 51 Fed. Cl.

362 , 364 (2002) (emphasis added). As the Court has explained, this "[C]ourt clearly has no authority over non-Federal entities." Bell BCI Co. v. United States, 56 Fed. Cl. 465, 469 (2003).

Here, the Government obviously funded and oversaw the work of its task order contractor, SRA. However, it has long been recognized that a Federal agency's control or supervision of the activities of another party does not make that party an agent of the Government. See DeRoche v. Unites States, 2 Cl. Ct. 809, 812 (1983)("it is well settled in this Court that a local authority does not become an agent of the Federal Government due to a Federal agency's control and supervision of grant funds"). Likewise here, SRA is not a Federal entity or agency and its subcontract awards to Compuserve and Infoterra were not Federal procurements. AR 641-735. Indeed, the subcontracts make plain that they are governed by the laws of the State of Virginia and that they are not directly subject to the Federal Acquisition Regulations ("FAR"). AR 675, 690. Accordingly, because SRA is not a Federal agency, this Court does not possess jurisdiction to review the procurement decisions at issue in this protest.

IV. The Subcontracts Make Plain That The Subcontractors Have No Privity Of Contract With The Government And, Therefore, Privity Cannot Be Established To Invoke Jurisdiction

Pursuant to the Tucker Act, in contract cases, the United States consents to be sued only by those with whom it has privity

of contract. Eubanks v. United States, 25 Cl. Ct. 131, 137 (1992). A claimant, therefore, "must provide 'evidence of the existence of some type of contract between it and the United States,' or it cannot sue and recover directly from the United States." Id. (quoting Putnam Mills Corp. v. United States, 202 Ct. Cl. 1, 8, 479 F.2d 1334, 1337 (1973)); see Merritt v. United States, 267 U.S. 338, 340 (1925); Etchey v. United States, 15 Cl. Ct. 152, 154-55 (1988).

Generally speaking, privity can be asserted successfully only under a contract to which the United States is a named party, Erikson v. United States, 12 Cl. Ct. 754, 756 (1987), and privity of contract is a jurisdictional prerequisite. United Pacific Ins. Co. v. United States, 26 Cl. Ct. 773, 778 (1992); see also Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984) (without privity of contract, plaintiff lacks standing to sue); Bolin v. United States, 221 Ct. Cl. 947, 950 (1979) (dismissing a contract action for lack of privity for failure to state a claim).

Here, there exists no privity of contract between the Government and SRA’s subcontractors, or potential subcontractors. The subcontracts at issue are expressly private agreements to which the Government is not a party. AR 642, 680. Although the work performed under the subcontracts is for the benefit of the Government, SRA’s role as the prime contractor gives it the sole

authority: (1) to direct work, AR 647, 709; (2) to make changes, AR 669, 684; (3) to accept or reject work, AR 655, 693-94; and (4) to pay the subcontractors, AR 659, 728-730. Indeed, the contractual relationship is expressly defined:

> In order to properly perform and/or execute this Subcontract, Subcontractor may require occasional interface with SRA's client, the U.S. Government. However, <u>no privity of contract exists between Subcontractor and the U.S. Government</u>. Subcontractor may neither take direction from, nor discuss any terms and conditions of this Subcontract, and/or SOW with the U.S. Government.

AR 691 (emphasis added).

Here, the plain language of the subcontracts obviously does not provide the Government with any rights or responsibilities, and the subcontractors lack privity of contract with the Government. Therefore, because no privity of contract exists between the subcontract awardees, Infoterra and Compusearch, and the Government, neither DSI nor STR ever had a reasonable expectation of having privity of contract with the Government. Accordingly, they have no jurisdictional basis to challenge the award of the subcontracts at issue or to otherwise maintain a lawsuit in this Court. Absent privity of contract or some other expression of the Government's consent to be sued with respect to these subcontracts, the Court should dismiss the complaint.

## V. SRA Cannot Be Construed To Be The Government's Agent For Purposes Of Invoking The Court's Protest Jurisdiction

As this Court has explained, "courts have not been willing to allow suits against the [G]overnment based on an agency theory unless the contract contains a reasonably clear indication that the [G]overnment intended to create an agency relationship and to permit such a suit." National Leased Housing Assoc. v. United States, 32 Fed. Cl. 454, 460 (1994). Contrary to the suspicions of DSI and STR, the PRIME 2.2 task order did not authorize SRA to act as the Government's agent for purposes of invoking this Court's bid protest jurisdiction. See Compl. ¶¶ 13, 18, 23. In this regard, DSI and STR allege that the Government "chose to delegate [its] procurement authority" to SRA, thereby making SRA an agent whose actions are reviewable in this Court. Compl. ¶ 5.

It is well-established that, for purposes of establishing Tucker Act jurisdiction, the definition of "agency" in 28 U.S.C. § 451 is controlling. See Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1080 (Fed. Cir. 2001); Blue Water Envtl., Inc. v. United States, 60 Fed. Cl. 48, 51-52 (2004) (declining to extend this Court's protest jurisdiction to non-Federal procurements under an agency theory). Section 451 prescribes that, for purposes of the judiciary, "agency" "includes any department, independent establishment, commission, administration, authority, board or bureau of the United States

or any corporation in which the United States has a proprietary interest, unless context shows that such term was intended to be used in a more limited sense." 28 U.S.C. § 451.

Although private contractors, like SRA, are clearly not included within the definition of "agency" under section 451, the court of appeals has explained that protest jurisdiction might be appropriate where a Government contractor is purely serving as a Government purchasing agent. US West Comm. Servs., Inc. v. United States, 940 F.2d 622 (Fed. Cir. 1991). In US West, the court of appeals ruled that, to establish an agency relationship that might permit a subcontractor to challenge a contract, the subcontractor would need to establish the three factor test set forth in United States v. Johnson Controls, Inc., 713 F.2d 1541 (Fed. Cir. 1983). US West, 940 F.2d at 626. Under the Johnson Controls test, a subcontractor might be able to establish a protestable agency relationship where: "[t]he prime contractor was (1) acting as a purchasing agent for the government; (2) the agency relationship between the government and the prime contractor was established by clear contractual consent; and (3) the contract stated that the government would be directly liable to the vendors for the purchase price." Johnson Controls, 713 F.2d at 1551; see also Blue Water, 60 Fed. Cl. at 53 (applying the Johnson Controls test).

Here, in order to proceed under an agency theory, DSI and STR would have to establish the three criteria set forth in Johnson Controls to potentially maintain this bid protest. Blue Water, 60 Fed. Cl. at 53-54 (quoting Johnson Controls, Inc., 713 F.2d at 1551); see also Globex Corp. v. United States, 54 Fed. Cl. 343, 348 (2002); Lockheed Martin Corp. v. United States, 50 Fed. Cl. 550, 562 (2001) aff'd, 48 Fed. App. 752 (Fed. Cir. 2002) (unpublished). A review of the administrative record reveals that DSI and STR cannot establish that any of these three criteria have been met in this case.

As an initial matter, DSI and STR cannot establish the first criteria of the Johnson Controls test that SRA was acting as the Government’s contracted “purchasing agent” with respect to the subcontracts at issue. There is nothing in SRA’s task order that implies, much less clearly states, that SRA was to act as USAID's purchasing agent. Instead, the record unquestionably establishes that SRA plays an independent role in the procurement process and that it is solely responsible for subcontract administration. AR 186, 647, 709. With respect the subcontracts that DSI and STR now protest, SRA: (1) issued the RFI; (2) received potential subcontractor offers; and (3) led the work of the technical evaluation team. AR 175-76, 639. Additionally, SRA was responsible for entering into the subcontracts and managing all phases of their administration. AR 647, 709. Far from the mere

ministerial duties of a purchasing agent, SRA played the expected role of an independent contractor with full responsibility for its relationship with the subcontractors to which it awarded contracts.

Indeed, SRA's procurements of the various commercial-off-the-shelf products that comprise the JAAMS project, including the ones at issue here, were not simple pass-through work. One of SRA's primary duties under its prime task order contract was to obtain a number of commercial-off-the-shelf products, which it was then required to integrate into a comprehensive and custom tailored good/service product for the Government. AR 170. In addition to owning and managing its subcontracts, SRA selected, installed and configured the hardware upon which the software would run, and it then installed, configured, and integrated the selected software with the Government's other operating systems. In this regard, SRA was responsible for rolling out an entire computer system to its Government users. Thereafter, SRA conducted: (1) change management; (2) data migration from legacy systems; (3) user training; and (4) system operations. AR 123-34, 175. Accordingly, the record establishes that SRA did not act as a mere "agent" for the Government, and its substantive and independent role is demonstrated by: (1) every step of its execution of the task order; (2) SRA's relationship with the

subcontractors; and (3) the overall implementation of the JAAMS project.

Additionally, DSI and STR have not alleged, and cannot establish, that the United States clearly consented to an agency relationship, as is required under the second criteria of the Johnson Controls test. The PRIME 2.2 statement of work established that the Government wanted SRA to serve as an independent intermediary, i.e., a “legal buffer,” between the Government and the ultimate sub-contractors. AR 186. SRA was required to “[i]ntegrate [commercial-off-the-shelf] packages from various vendors generally; and integrate these acquisition and assistance systems (specifically).” Id. As this Court has explained, having a prime contractor enter into sub-contracts "creates a legal buffer between the subcontractor and the Government . . . . If direct access were allowed to all Government subcontractors . . . [there would be] numerous frivolous claims." Lockheed Martin Corp., 50 Fed. Cl. at 554. Here, PRIME 2.2 clearly established the contractual relationship between SRA and the Government, but it did not grant SRA any authority to bind the Government. DSI and STR have failed to allege any facts that establish an agency relationship, let alone that the Government provided the required clear contractual consent for SRA to act as the Government's agent. Therefore, DSI

and STR have failed to satisfy the second prong of the Johnson Controls test.

Finally, DSI and STR have failed to allege, and cannot demonstrate, the third criteria of the Johnson Controls test, i.e., that the subcontracts at issue made any entity other than SRA liable to the subcontractors. As demonstrated above, PRIME 2.2 established SRA as solely responsible for all interactions with the selected commercial-off-the-shelf subcontractors, and the subcontracts themselves expressly stated that “only SRA is authorized to direct the subcontractor with respect to the obligations, responsibilities, terms, and conditions of the subcontract awarded.” AR 647, 709. In this regard, there exists no provision under the subcontracts or the prime contract, which establish that the Government would be directly liable to SRA’s subcontractors.

Here, the record makes clear that there was: (1) no agency relationship between USAID and SRA; (2) no clear contractual consent by USAID to any such agency relationship; and (3) no clear provision whereby USAID agreed to be directly liable to the subcontractors for anything. To the contrary, as in Johnson Controls, there was a clearly demarcated two-tiered contracting relationship by which the Government intended to establish a legal buffer between itself and those providing subcontract goods to SRA. See Johnson Controls, 713 F.2d at 1552. Because the

record makes plain that SRA did not act as a Government agent, such that DSI and STR can maintain this protest, the complaint should be dismissed.

## VI. This Court Does Not Possess Jurisdiction To Consider Plaintiffs' Apparent Challenge To USAID's Task Order With SRA And Plaintiffs Do Not Otherwise Have Standing To Make Such A Challenge

Beyond the obvious problems that we have established with respect to plaintiffs' attempt to invoke the bid protest jurisdiction of this Court, in their complaint, DSI and STR acknowledge that their true complaint with USAID is the agency's selection of SRA as a computer systems integrator and SRA's awarding of the subcontracts at issue. See Compl. ¶¶ 8, 27-49. DSI and STR argue that the Government "improperly delegated an inherently governmental function," "improperly bundled the separate software procurements," and "failed to examine and identify the organizational conflict[s] of interest by choosing a lead systems integrator [i.e., SRA] to assist in the evaluation and selection of the software systems at issue." Compl. ¶ 8.

In this regard, DSI and STR argue that USAID violated the Competition in Contracting Act, 31 U.S.C. § 2304(a)(1)(A), and FAR Part 6.101, which require full and open competition, when SRA was awarded the PRIME 2.2 task order under the GSA's Millenia contract and that the Government improperly "delegate[d] their procurement authority to [SRA]." Id. However, just as DSI and

STR cannot establish the Court's jurisdiction to review SRA's private procurements, they similarly cannot establish jurisdiction or standing in this Court to protest the PRIME 2.2 task order awarded to SRA.

The issuance of an IDIQ GSA task order, like the one awarded to SRA here, is not a protestable action that is subject to the Court's jurisdiction. 41 U.S.C. § 253j(d); 4 C.F.R. § 21.5(A); A&D Fire Protection, Inc. v. United States, No. 06-467C, slip op. at 11-13 (Fed. Cl. August 10, 2006). In A&D Fire Protection, the Court recently held that 41 U.S.C. § 253j(d) bars the Court from exercising jurisdiction over a protest of a task order awarded under a GSA IDIQ contract, and that the plaintiffs also lacked "interested party" status because, although they submitted a proposal, they failed to include the required bid bond. Id. at 13 & 18; see also Group Seven Assocs., LLC v. United States, 68 Fed. Cl. 28, 30-32 (2005) (similarly explaining that the Court does not possess jurisdiction to hear a protest of a task order issued under a GSA Federal Supply Schedule contract).

SRA is one of the nine GSA Millennia contractors, and it was awarded the PRIME 2.2 task order on November 6, 2003, based upon a competitive selection. AR 42 ("SRA presently holds the USAID Prime 2.2 task order under its Millenia contract with GSA FEDSIM"); see also AR 123, 174, 178. In their complaint, DSI and STR do not dispute these facts, which necessarily place the

issuance of the task order outside of the Court's jurisdiction. Here, the Court does not possess jurisdiction to consider the plaintiffs' challenge to the award of the PRIME 2.2 task order, even if such a challenge had been timely filed.

Indeed, in attempting to challenge SRA's task order, neither DSI nor STR can be construed to be an "interested party" under CICA, and they similarly lack standing to allege a CICA claim. CICA defines an "interested party" as an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or failure to award the contract." 31 U.S.C. § 3551(2). The doctrine of standing is based on a general prohibition against one litigant raising the legal rights of another. Gentex Corp. v. United States, 61 Fed. Cl. 49, 52 (2004). Subcontractors of offerors, which are not themselves actual or prospective bidders, are not "interested parties" within the meaning of CICA and the Tucker Act. Eagle Design & Management, Inc. v. United States, 62 Fed. Cl. 106 (2004) (holding that prospective subcontractor was not an interested party in bringing a post-award bid protest). Additionally, one must either file a timely bid protest or submit an offer in order to qualify as a "prospective" bidder for standing purposes. Waste Management of North American, Inc. v. Weinberger, 862 F.2d 1393, 1398 (9th Cir. 1988). Here, neither plaintiff has alleged that they filed a bid protest, or that they

submitted a bid for the original GSA Millenia Contract or for the PRIME 2.2 task order. Accordingly, DSI's and STR's efforts to, in essence, challenge the award of SRA's task order should be rejected by this Court.

## VII. The Court Does Not Possess Jurisdiction To Entertain This Bid Protest And The Existing Agency Record Is Sufficient To Establish That The Complaint Should Be Dismissed

As we established above, DSI and STR have failed to establish that this Court possesses jurisdiction to entertain this protest. "Subject matter jurisdiction is a threshold matter which must be addressed before the Court reaches the merits of the plaintiff's claims." Deponte Invs., Inc. v. United States, 54 Fed. Cl. 112, 115 (2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Hambsch v. United States, 857 F.2d 763, 765 (Fed. Cir. 1988) ("When a court is without jurisdiction to hear a case, it is correspondingly without authority to decide the merits of a case."), cert. denied, 490 U.S. 1054 (1989). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. at 94 (quoting Ex Parte McCardle, 74 U.S. 506, 514 (1869).

Here, to the extent that the Court is required to "review the agency's decision pursuant to the standards set forth in section 706 of title 5" of the Administrative Procedure Act ("APA"), it is well-settled that the APA does not contemplate the Court undertaking a de novo review of the agency's actions. See 28 U.S.C. § 1491(b)(4). Rather the APA limits the Court to considering whether the actions taken were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," based solely upon the record before the agency. 5 U.S.C. §§ 702, 706(2)(A). In reviewing an agency's actions pursuant to this deferential standard, "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially by the reviewing court.'" Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973).

Limiting judicial review of agency actions to the administrative record reflects the ultimate standard of review under the APA, which presumes the validity of agency action and precludes the judiciary from substituting its judgment for that of the agencies entrusted by Congress to implement and administer various Governmental programs. See, e.g., Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 557-558 (1978). "'To permit an administrative determination to be attacked or supported in court by new evidence,' the

Supreme Court has admonished, 'would substitute the court [for] the administrative tribunal . . . .'" Doraiswamy v. Secretary of Labor, 555 F.2d 832, 840 (D.C. Cir. 1976) (citation omitted).

Therefore, in determining whether to look outside of the record for an explanation of an agency decision, the Court must start its analysis with the presumption of regularity that attaches to agency decision-making. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001). “Because of that presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious. The litigant challenging that presumption necessarily bears a heavy burden.” Id. (emphasis added). The Court should, thus, only allow supplementation of the administrative record in very “limited” circumstances, where record evidence establishes that supplementation is necessary. Id.; Cubic Applications, Inc. v. United States, 37 Fed. Cl. 339, 342 (1997).

As noted by DSI and STR, the Court has the power to require supplementary information “[w]hen an explanation of a contracting officer’s decision is required for meaningful judicial review.” Asia Pac. Airlines v. U.S., 68 Fed. Cl. 8, 18 (2005). However, in discussing such extra-record discovery, the court of appeals has noted that: "[W]e wish to emphasize that such discovery of

the contracting officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's . . . determination." Impresa Construzioni, 238 F.3d at 1340-41 (emphasis added). Indeed, it is well-settled that Government contract officials are presumed to exercise their duties in good faith. See Galen Medical Associates, Inc. v. United States, 369 F.3d 1324, 1335 (Fed. Cir. 2004). Accordingly, a plaintiff seeking to supplement an administrative record must make "a strong showing of bad faith or improper behavior" to compel the testimony of such officials. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971). Such a showing requires "hard facts," not inferences based upon "suspicion and innuendo." C.A.C.I., Inc.-Federal v. United States, 719 F.2d 1567, 1582 (Fed. Cir. 1983).

With respect to this bid protest, the scope of the Court's judicial review is limited by the Court's jurisdiction and, to the extent necessary, meaningful judicial review is satisfied by the agency's administrative record, which has been filed with the Court. Here, the existing administrative record provides ample basis to support the dismissal of plaintiffs' complaint. Further, neither the record evidence, nor plaintiff's allegations, indicate any absence of good faith upon the part of the Government or about the rationality of the Government's

involvement in this non-Federal procurement, which might otherwise provide a justification for an additional evidentiary inquiry. Indeed, it is not apparent from a review of plaintiffs' filings what actual reviewable decision by a Government contracting officer is rationally related to their document and deposition requests.

Rather, it is apparent that DSI and STR seek to use a broad expansion of the administrative record to bypass clear jurisdictional defects of their complaint, in order to obtain discovery well-beyond the scope of their claims. Although DSI and STR argue that "[t]he key documents/information necessary for the Court to conduct a meaningful review of the administrative record concern the entire procurement process," pl. mot. to supp. at 17, a review of the complaint makes clear that the requirements of meaningful judicial review are fully satisfied by the facts presented in the agency record and by the law upon its face, and that no supplementation of the record is required for meaningful judicial review.

CONCLUSION

For the reasons set forth above, we respectfully request that the Court dismiss the complaint and deny plaintiffs' request to supplement the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/ Kent G. Huntington
KENT G. HUNTINGTON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-9369
Facsimile: (202) 353-7988

OF COUNSEL:
WARREN D. LEISHMAN
PETER YOUNG
USAID
Office of General Counsel
Ronald Reagan Building
Room 6.6.064
1300 Pennsylvania Ave., NW
Washington, DC 20523
Telephone: (202) 712-5019

August 16, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on August 18, 2006, a copy of foregoing “DEFENDANT’S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS’ MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Kent G. Huntington