No. 06-467C
(Judge Merow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DISTRIBUTED SOLUTIONS INC.,

and

STR, L.L.C.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO OUR MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

KENT G. HUNTINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. No.: (202) 353-9369
Fax No.: (202) 353-7988

OF COUNSEL:
WARREN D. LEISHMAN
PETER YOUNG
USAID
Office of General Counsel
Ronald Reagan Building
Room 6.6.064
1300 Pennsylvania Ave., N.W.
Washington, D.C. 20523
Tel. No.: (202) 712-5019

December 14, 2006

Attorneys For Defendant

**TABLE OF CONTENTS**

PAGE(S)

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO OUR MOTION TO DISMISS ........................................ 1

ARGUMENT ...................................................... 2

I. As The GAO Properly Determined, DSI And STR Are Simply Disappointed Subcontractors That Ultimately Lacked Privity To Challenge SRA's Award Decisions ... 2

II. Tucker Act Jurisdiction Is Not Without Limitation ... 7

III. Even Under The Unlimited Theory Of Tucker Act Jurisdiction Advanced By DSI and STR, They Still Have Not Alleged A Violation Of Statute Or Regulation In Connection With A Federal Procurement For Which They Are Interested Parties ............................ 13

A. DSI And STR Are Not Interested Parties Under CICA And The Tucker Act ........................... 14

B. Plaintiffs Have Not Connected Their Claims To A Specific Federal Procurement ................. 17

C. DSI and STR Cannot Allege Violations Of A Statute Or Regulation For Which They Are Interested Parties ..................................... 20

CONCLUSION .................................................. 23

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

ABF Freight System Inc. v. United States,
55 Fed. Cl. 392 (2003) .................................. 22

A&D Fire Protection, Inc. v. United States,
72 Fed. Cl. 126 (2006) .............................. 12, 13

Aerolease Long Beach v. United States,
31 Fed. Cl. 342 (1994), aff'd 39 F.3d 1198
(Fed. Cir. 1994) ........................................ 22

Automation Technologies, Inc. v. United States,
No. 06-694C, 2006 WL 3072567 (Fed. Cl. Oct 27, 2006) .... 13

Bell BCI Co. v. United States,
56 Fed. Cl. 465 (2003) .................................. 16

Blue Dot Energy Co. v. United States,
61 Fed. Cl. 548 (2004) rev'd on the merits,
179 Fed. Appx. 40 (Fed. Cir. 2006) ............... 9, 10, 16

Blue Water Envtl. v. United States,
60 Fed. Cl. 48 (2004) .................................... 4

CCL, Inc. v. United States,
39 Fed. Cl. 780 (1997) ................................... 8

CSE Constr. Co. v. United States,
58 Fed. Cl. 230 (2003) ................................... 3

Eagle Design & Management, Inc. v. United States,
62 Fed. Cl. 106 (2004) .................................. 20

Group Seven Assocs. v. United States,
68 Fed. Cl. 28 (2005) ................................... 12

Electro-Voice, Inc.,
B-278319, B-278319.2, January 15, 1998, 98-1 CPD ¶ 23. . 10

Information Sciences Corp. v. United States,
73 Fed. Cl. 70 (2006) ................................... 16

Labat-Anderson, Inc. v. United States,
50 Fed. Cl. 99 (2001) .................................... 9

Myers Investigative & Sec. Servs., Inc. v. United States,
275 F.3d 1366 (2001) .................................... 14

OTI American Inc. v. U.S.,
68 Fed. Cl. 108 (2005) ........................... 7, 10, 12

Phoenix Air Group v. United States,
46 Fed. Cl. 90 (2000) .................................... 9

Phoenix Air Group v. United States,
46 Fed. Cl. 990 (2000), dismissed, 243 F.3d 555
(Fed. Cir. 2000) ........................................ 16

Pitsker v. OPM,
234 F.3d 1378 (Fed. Cir. 2000) .......................... 11

RAMCOR Servs. Group, Inc. v. U.S.,
185 F.3d 1286 (Fed. Cir. 1999) ........................... 8

Rex Serv. Corp. v. United States,
448, F.3d 1305 (Fed. Cir. 2006) ......................... 14

US West Comm. Servs., Inc. v. United States,
940 F.2d 622 (Fed. Cir. 1991) ............................ 3

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed. Cir. 1983) ...................... passim

## STATUTES

4 C.F.R § 15.201(e) .................................... 15

15 U.S.C. § 631(j)(3) .................................. 21

28 U.S.C. § 1491(b)(1) ............................... 7, 14

28 U.S.C. § 3551(2) .................................... 15

31 U.S.C. § 3551(1) .................................... 15

41 U.S.C. § 253j(d) .................................... 12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **DISTRIBUTED SOLUTIONS INC.,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **STR, L.L.C.,** | ) | |
| | ) | **No. 06-466C** |
| **Plaintiffs,** | ) | **(Senior Judge Merow)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION**
**TO OUR MOTION TO DISMISS**

Defendant, the United States, respectfully submits this reply in response to the brief filed in opposition to our motion to dismiss by plaintiffs, Distributed Solutions, Inc.("DSI") and STR, L.L.C. ("STR"). As we established in our opening brief and, as we again establish below, the Court should dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

In their opposition brief, DSI and STR confirm that they were simply disappointed subcontractors that bid upon a non-Federal procurement, in which the successful subcontractors had no contractual privity with the Government. In this regard, the Court should reject plaintiffs' attempt to expand the Court's limited jurisdictional mandate to include "any protest," however tangentially connected to a Federal procurement. Additionally,

as a review of their opposition brief makes clear, DSI and STR do not qualify as interested parties under the Tucker Act and they similarly lack standing to pursue this protest. Indeed, by attempting to confuse the Court by mixing three separate procurements, two Federal and one private, and by arguing that they are protesting the entire procurement process, which spans these three procurements, DSI and STR confirm that this protest should be dismissed. Accordingly, we respectfully request that the Court grant our motion to dismiss this case in its entirety.

## ARGUMENT

### I. As The GAO Properly Determined, DSI And STR Are Simply Disappointed Subcontractors That Ultimately Lacked Privity To Challenge SRA's Award Decisions

In their opposition brief, DSI and STR incorrectly argue that this Court possesses jurisdiction to entertain their challenge to the award of a non-Federal subcontract. DSI's and STR's attempts to rely upon the precedent of the General Accountability Office ("GAO") and this Court is unavailing here because they have failed to meet the high standard for establishing a privity relationship with the Government. Indeed, they have failed to acknowledge that their arguments already have been rejected by the GAO. See Pl. Opp'n at 5, 31-35.

Simply stated, DSI's and STR's attempts to construe GAO and Court precedent ignore the very cases in which the GAO rejected the same arguments advanced by the same protesters. In STR,

L.L.C., B-297421, December 22, 2005, 2006 CPD ¶ 11, AR 238, and Distributed Solutions, Inc., B-297421.2, January 25, 2006, AR 282, the GAO considered whether the same procurements now at issue were conducted by a Federal agency or by a contractor that was acting as a procurement agent for a Federal agency. The GAO rejected the same theories of jurisdiction that are again offered by DSI and STR, determining that the procurements were not conducted by or for a Federal agency. AR 239, 282 (STR, L.L.C. at 2; Distributed Solutions at 1). Specifically, the GAO considered the Johnson Controls factors that we addressed in our initial brief and determined that SRA was not acting as a procurement agent. AR 240 n. 2, 282; see also United States v. Johnson Controls, Inc., 713 F.2d 1541, 1553 (Fed. Cir. 1983); US West Comm. Servs., Inc. v. United States, 940 F.2d 622 (Fed. Cir. 1991). The GAO determined that "the prime contract did not appoint SRA as the [G]overnment's agent. In addition, there is no evidence that the [G]overnment will be directly liable to [the selected subcontractor] for the purchase price." AR 240 n.2.

Here, DSI and STR apparently request the Court to interpret GAO precedent in such a way as to reject these two GAO decisions, which are based upon that very same precedent and which rejected DSI's and STR's same theories of jurisdiction. This Court, however, has recognized the value of GAO's expertise in resolving contested procurements. See CSE Constr. Co. v. United States, 58

Fed. Cl. 230, 256 (2003). DSI and STR have failed to challenge the holdings of the prior GAO decisions or to point to new information that might warrant reconsideration. Rather, DSI and STR only offer the same arguments with the same justifications without acknowledging the prior decisions of the GAO. Like the GAO, the Court should dismiss plaintiffs' protest of the award of non-Federal subcontracts.

As we established in our initial brief, even a renewed analysis of the Johnson Controls test demonstrates that the Court does not possess jurisdiction to consider DSI's and STR's protest. See Def. Br. at 15-19; Johnson Controls, 713 F.2d at 1551. Specifically, DSI and STR have failed to satisfy the three-pronged test prescribed by the court of appeals in Johnson Controls. Id.; see also Blue Water Envtl. v. United States, 60 Fed. Cl. 48, 51-53 (2004). Indeed, DSI and STR's argument that this Court possesses jurisdiction to consider this protest ignores the key role of SRA, Inc. ("SRA") as a computer systems integrator that is responsible for providing a full acquisition and assistance system to the United States Agency for International Development ("USAID"). AR 125-26. As described in the statement of work ("SOW") for the task order awarded to SRA: "The PRIME 2.2 initiative while primarily focused on providing support for Washington, DC–based activities will be considered for implementation Mission-wide. USAID is interested in a vendor

with solutions that will ensure improved service continuity and effective technology planning and management." AR 961. The software packages at issue here formed a small part of the Government's overall procurement strategy to improve the computer acquisition and assistance systems at USAID. AR 168-72. Moreover, the fact that the two protesters offered two unrelated software systems, one for acquisition and one for grants assistance, demonstrates the larger integration effort SRA was undertaking for USAID. See Pl. Opp'n at 7. The agency's intent was clearly to obtain a comprehensive computer IT solution and support services, and not merely the simple procurement of some computer software.

As we have demonstrated, the terms of the relevant subcontracts establish that privity could not exist between the relevant subcontractors and the Government. As their opposition brief makes plain, DSI and STR have ignored the plain language of the subcontracts, as well as a full review of the Johnson Control test, in attempting to uncover Government control over the subcontracts. In this regard, DSI and STR do not dispute the specific subcontract clauses, which define SRA's role as the prime contractor. Specifically, SRA retained sole authority: (1) to direct work, AR 647, 709; (2) to make changes, AR 669, 684; (3) to accept or reject work, AR 655, 693-94; and (4) to pay the subcontractors, AR 659, 728-730. Under Johnson Controls, courts

also look to the contract documents to determine whether a direct appeal to the Government by a subcontractor is authorized. See Johnson Controls, Inc., 713 F.2d at 1548-50. Here, with respect to this necessary element of privity, there exist no provisions for direct appeals to the Government for subcontractors. Id.

Finally, it bears mention that DSI and STR have ignored the "ABC" clause, which we cited in our opening brief. Def. Br. at 13, 19. The ABC clause defines the role of subcontractors and, in relevant part, states:

> In order to properly perform and/or execute this Subcontract, Subcontractor may require occasional interface with SRA's client, the U.S. Government. However, no privity of contract exists between Subcontractor and the U.S. Government. Subcontractor may neither take direction from, nor discuss any terms and conditions of this Subcontract, and/or SOW with the U.S. Government.

AR 691. As the Court held in Johnson Controls, "the 'ABC' clause is an important, if not determinative, factor in [the] analysis of the intent of the parties as seen through the contract documents." Id. at 1553. Here, the ABC clause unequivocally states that no contractual relationship shall exist between the Government and a selected subcontractor. AR 691.

Accordingly, DSI and STR have failed to establish any of the factors which might demonstrate that the Government and the subcontractors were "otherwise in privity." Absent privity with the Government, this Court does not possess jurisdiction to

consider this bid protest.

## II. Tucker Act Jurisdiction Is Not Without Limitation

Because DSI and STR cannot establish bid protest jurisdiction to challenge the private procurements for which they competed, DSI and STR have instead asked the Court to expand its Tucker Act jurisdiction to permit them to challenge any action, which might be in any way related to a Government procurement. Pl. Opp'n at 3, 13-17. This expansive view of the Court's protest jurisdiction is inconsistent with the text of the Tucker Act and Court precedent which has reviewed its bounds.

As DSI and STR note, the Tucker Act grants the Court jurisdiction to entertain three types of bid protests that are alleged by interested parties: (1) pre-award protests; (2) post-award protests; and (3) protests that allege violations of a statute or regulation in connection with a Government procurement or proposed procurement. 28 U.S.C. § 1491(b)(1); see also OTI American Inc. v. U.S., 68 Fed. Cl. 108, 113 (2005). Here, DSI and STR argue that the third prong should be read to provide this Court jurisdiction over any complaint, no matter how tenuously connected to a Government procurement. However, the instances in which this Court has exercised jurisdiction based upon the third prong are, in fact, extremely limited. There are only four kinds of cases in which this "third prong" jurisdiction has been granted, and none are analogous to this case, where the protested

procurements are merely subcontracts in a non-Federal procurement.

First, the Court has ruled that there may be an adequate connection to a Government procurement to consider allegedly improper overrides of award or performance stays required by CICA and the FAR. See RAMCOR Servs. Group, Inc. v. U.S., 185 F.3d 1286, 1289 (Fed. Cir. 1999). Such claims involve parties who already have filed a separate and timely protest, which is under active review. Here, the plaintiffs filed GAO protests, but they have since been dismissed. The GAO determined that it lacked jurisdiction to consider the protests because "the procurement at issue was not conducted by or for a [F]ederal agency." AR 239. Unlike in RAMCOR, the plaintiffs' GAO litigation is long over and there exists no connection between the plaintiffs and the procurement they challenge.

Second, the Court has ruled that there may be an adequate "connection" to consider alleged changes in the scope of an existing contract. See CCL, Inc. v. United States, 39 Fed. Cl. 780, 788-89 (1997). DSI and STR mistakenly rely upon CCL to justify their expansive view of the Court's protest jurisdiction. However, the circumstances in CCL and the circumstances found here are not analogous. Prior to the enactment of the Tucker Act, protests alleging changes in the scope of an existing contract long enjoyed jurisdiction in this Court. Id. at 789

n.18. However, as we established in our initial brief, DSI and STR have not challenged the Government's expansion of the scope of the task order awarded to SRA under the FEDSIM Millennia GWAC indefinite delivery, indefinite quantity ("IDIQ") contract (the "Millenia contract") because the statement of work clearly contemplated the types of acquisitions and integration services at issue here. See AR 773-74.

Third, the Court has ruled that there may be an adequate "connection" to consider Government procurement decisions not to compete an activity at all. See, e.g., Labat-Anderson, Inc. v. United States, 50 Fed. Cl. 99, 103-04 (2001); Phoenix Air Group v. United States, 46 Fed. Cl. 90, 97 (2000); Blue Dot Energy Co. v. United States, 61 Fed. Cl. 548, 551 (2004) rev'd on the merits, 179 Fed. Appx. 40 (Fed. Cir. 2006). From this line of cases, DSI and STR mistakenly argue that the facts in Blue Dot are "strikingly similar" to those presented here. In Blue Dot, the Court ruled that it possessed bid protest jurisdiction where the Government had made a sole-source award without any competition, after withdrawing previous solicitations for which the protestors would have been eligible to compete. Blue Dot, 61 Fed. Cl. at 551. Here, there was neither a similar sole-source award by the Government, nor even a solicitation issued by the Government. Moreover, as we established in our initial brief, the methods by which the Government would be furnished commercial

off-the-shelf software was fully competed among the nine awardees of the Millennia contract during USAID's award of a task order in 2003. DSI and STR were not eligible to compete for that task order. After the task order was competed and awarded to SRA, USAID issued an request for information ("RFI") that stated that the Government was "soliciting vendor responses to this RFI for market research purposes only. <u>This RFI will not result in a contract award</u>." AR 16 (emphasis added). <u>Blue Dot</u> is simply not applicable because here the RFI informed DSI and STR that they should <u>not</u> expect the Government to compete or award a contract.

Fourth and finally, the Court has determined that there may be an adequate connection to a Government procurement to exercise jurisdiction where there are allegations of violations related to an ongoing competition between contractors for work, <u>i.e.</u>, "downselect decisions." <u>See</u>, <u>e.g.</u>, <u>OTI America, Inc. V. United States</u>, 68 Fed. Cl. 108 (2005); <u>Electro-Voice, Inc.</u>, B-278319, B-278319.2, January 15, 1998, 98-1 CPD ¶ 23. These cases involved an ongoing contractual relationship between the protestor and the Government. For example, <u>OTI</u> involved a "procurement consisting of multiple contracts, each containing sequential qualifying steps . . . and a final procurement." <u>Id.</u> at 111. Here, there was no ongoing contractual relationship between plaintiffs and the Government. The Government selected a prime vendor, SRA, to procure necessary software components and

to integrate them into agency-wide computer system. Thus, the procurement here never involved the type of competitive "downselect" which is central to this line of cases.

Although these four types of cases are clearly distinguishable, DSI and STR argue that they should be extended to include any feasible complaint that can be argued to be "in connection with" a Federal procurement, i.e., even when the protestor does not challenge a Government procurement, but instead challenges the Government's decisions to use a previously competed and awarded task order under a previously competed and awarded IDIQ contract that was conducted by another Federal agency. The Court should decline DSI and STR's invitation to stretch the third prong of the Tucker Act to such an absurd result. See Pitsker v. OPM, 234 F.3d 1378, 1383 (Fed. Cir. 2000) (invoking the canon of statutory construction that an interpretation that causes absurd results must be avoided if at all possible). Unlike the four types of cases discussed above, where the the alleged statutory violation is directly and clearly linked to a Federally conducted procurement, DSI and STR request the Court to extend its jurisdiction to include claims that are centrally based upon non-Federal procurements. The Court should reject plaintiffs' attempt to expand the Court's jurisdiction to include non-Federal procurements.

As we established in our initial brief, DSI's and STR's

arguments, although novel, are more reminiscent of those cases in which the Court has declined to exercise jurisdiction. See, e.g., A&D Fire Protection, Inc. v. United States, 72 Fed. Cl. 126, 133-34, 137 (2006) (ruling that 41 U.S.C. § 253j(d) bars the Court from exercising jurisdiction over a protest of a task order awarded under a General Services Administration ("GSA") IDIQ contract and that the plaintiffs also lacked interested party status); Group Seven Assocs. v. United States, 68 Fed. Cl. 28, 30-32 (2005) (similarly explaining that the Court does not possess jurisdiction to hear a protest of a GSA task order). Indeed, in their opposition brief, DSI and STR misstate the holding in A&D Fire Protection by arguing that this case is more like OTI than A&D Fire Protection "because it concerns a challenge to the elimination of competition at an early stage of a procurement process." Pl. Opp. at 18. Rather, in A&D Protection, the Court distinguished the holding in OTI and held exactly the opposite of what DSI and STR argue here. The Court in A&D Protection noted that, "under quite different circumstances[, the OTI Court] took jurisdiction over a protest of a later stage of competition in a multiple award contract." A&D Fire Protection, 72 Fed. Cl. at 134 n.8 (emphasis added).

As we have established, the situation here is significantly different from the facts in downselect cases, like OTI, where the Court has found jurisdiction. The more analogous situation is

A&D Fire Protection, where the only Government action being challenged was the use of a task order under an IDIQ contract. A&D Fire Protection, 72 Fed. Cl. at 133-34; see also Automation Technologies, Inc. v. United States, No. 06-694C, 2006 WL 3072567, at *9 (Fed. Cl. Oct 27, 2006) (citing A&D Fire Protection). Here, DSI and STR have cited no precedent for the Court to exercise jurisdiction over a bid protest challenging the subcontracts awarded pursuant to a prior task order procurement, which clearly contemplated that the subcontracts would be selected in a non-Federal procurement.

DSI and STR have failed to establish that this Court has jurisdiction under the Tucker Act to entertain this protest. The expansive reading of the Tucker Act advanced by plaintiffs would substantially broaden the Court's jurisdiction to include non-Federal procurements that the Court, under Johnson Controls, should not entertain. Such an expansion of the Court's jurisdiction would improperly construe the clear terms of the Tucker Act and this Court's precedent. The Court should reject plaintiffs' expansive reading of the Tucker Act.

## III. Even Under The Unlimited Theory Of Tucker Act Jurisdiction Advanced By DSI and STR, They Still Have Not Alleged A Violation Of Statute Or Regulation In Connection With A Federal Procurement For Which They Are Interested Parties

Even assuming for the sake of argument that DSI's and STR's expansive theory of Tucker Act jurisdiction were correct, DSI and

STR would still be required to establish the facial requirements of the third type of Tucker Act jurisdiction, namely: (1) the violation of a statute or regulation; (2) in connection with; (3) a Federal procurement; (4) to which plaintiffs are interested parties. 28 U.S.C. § 1491(b)(1). DSI's and STR's attempts to invoke this Court's jurisdiction must fail because they have not alleged a statutory or regulatory violation that is adequately connected to a Federal procurement and for which they are interested parties.

### A. DSI And STR Are Not Interested Parties Under CICA And The Tucker Act

As their brief acknowledges, DSI and STR are not interested parties because they never made offers in response to a Government solicitation. Pl. Opp'n at 18. Rather, they simply supplied information to USAID in response to an RFI. Standing is a necessary prerequisite that a protester must establish. Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369-70 (2001). A contractor can only be an interested party if the underlying procurement relates to a "solicitation by a Federal agency for bids or proposals." 28 U.S.C. § 1491(b)(1); Rex Serv. Corp. v. United States, 448, F.3d 1305, 1307 (Fed. Cir. 2006)("the term 'interested party' in the [Tucker Act] is construed in accordance with the Competition in Contracting Act ("CICA")").

Here, DSI and STR were never actual or prospective bidders to a "solicitation or other request by a Federal agency for offers for a contract for the procurement of property or services." 31 U.S.C. § 3551(1)(A). Although DSI and STR may have anticipated a future chance to make such offers or bids, see Pl. Reply at 25, 29, 30, USAID's June 2005 RFI did not create the opportunity to do so. RFIs serve the limited purpose of aiding the Government in conducting market research. Specifically, "RFIs may be used when the Government does not presently intend to award a contract, but wants to obtain price, delivery, other market information, or capabilities for planning purposes. Responses to these notices are not offers and cannot be accepted by the Government to form a binding contract." 4 C.F.R. § 15.201(e) (emphasis added).

Here, the USAID-issued RFI did not solicit offers or promise an impending contract, rather the RFI simply informed DSI and STR that the Government was "soliciting vendor responses to this RFI for market research purposes only. . . . [and that the] RFI [would] not result in a contract award." AR 16. Absent a Federal procurement or request for offers that could lead to a contract, DSI and STR are not "actual or prospective bidders," 28 U.S.C. § 3551(2)(A), for purposes of establishing interested party status under the Tucker Act. Indeed, DSI and STR also lack standing to challenge the August RFI issued by SRA because it was

issued and administered by SRA, a non-Federal entity over which this Court has no authority. See Bell BCI Co. v. United States, 56 Fed. Cl. 465, 469 (2003).

The facts involved here also distinguish the cases cited by DSI and STR to establish standing. In Blue Dot, 61 Fed. Cl. at 551, the Air Force issued a formal solicitation and then cancelled the solicitation in order to award a direct sole-source contract. The Court ruled, in part, that the incumbent had standing to challenge the procurement because it had bid on the original solicitation and thus could have had a substantial chance for award. Id. Similarly, in Phoenix Air Group v. United States, 46 Fed. Cl. 990, 102 (2000), dismissed, 243 F.3d 555 (Fed. Cir. 2000), a contractor submitted a proposal in response to a Government-issued solicitation, which was subsequently cancelled. Likewise, the protesters in Information Sciences Corp. v. United States, 73 Fed. Cl. 70 (2006), all submitted bids in response to a solicitation issued by the General Services Administration. Each of these cases is premised upon a formal contracting action taken by a Government entity, which formed the basis of the challenges advanced by disappointed contractors. Here, DSI and STR have failed to cite any precedent where a contractor was found to have standing to bring suit in the absence of a Government solicitation or request for bids. Absent this, the Court should conclude that DSI and STR lack

standing, and the case should be dismissed.

**B. Plaintiffs Have Not Connected Their Claims To A Specific Federal Procurement**

In their attempt to invent a "connection" with a Government procurement, DSI and STR have muddled three separate procurements, namely: (1) the fully and openly competed GSA competition, which resulted in the awards of IDIQ contracts to nine different contractors; (2) the USAID task order that was competed between those nine contractors and ultimately awarded to SRA; and (3) the competition and purchase of software by the private company, SRA. DSI and STR do not dispute that they did not compete in either of the first two Government procurements. Rather, DSI and STR competed for and lost the SRA software procurement. However, as we established above, because DSI and STR cannot establish that the Court possesses jurisdiction over SRA's private purchase of software under an agency or privity theory, DSI and STR allege that these three procurements are simply one and the same and that they, thus, are challenging "the entire procurement process." To the extent the above-referenced three procurements are "connected" at all, DSI's and STR's protest relates directly either to: (1) the private procurement conducted by SRA, a procurement for which this Court does not possess jurisdiction to review; or, arguably (2) the competition and award of the task order by USAID, a procurement for which DSI

and STR lack standing to challenge.

This reality is best illustrated by the self-stated “crux” of plaintiffs’ case: “the Government’s decision, without conducting the required analysis, to utilize [a] task order in the first place to allow the IDIQ contractor to procure software for the Government.” Pl. Opp. at 4. Even assuming for the sake of argument that the complaint alleged a violation of law or regulation connected to the decision to use SRA to procure software, DSI and STR could neither be interested parties, nor timely, because this procurement action was part of USAID’s competition and award of the Prime 2.2 Task Order in 2003.

USAID explicitly contemplated that the task order awardee would purchase commercial off-the-shelf (“COTS”) software when it issued its Request for Task Order Proposals (”RFTOP”) under the GSA FEDSIM Government-wide acquisition contract in 2003. For instance, the RFTOP statement of work required:

> <u>Under this task order, the contractor shall furnish</u> the necessary technical personnel, materials, equipment, <u>commercial off-the-shelf (COTS) software, system software</u>, telecommunications, facilities, and related services required to provide the Government with the Government-approved support. Based on the Statement of Objectives contained in Section J, Attachment A and the conditions listed below, the contractor shall perform the tasks in the contractor-developed and Government-approved Performance Work Statement (PWS) and Contract Work Breakdown Structure (CWBS) in accordance with the proposed contractor-developed and Government-

> approved Service Level Agreements (SLAs)/performance metrics at the level of service indicated therein. (The contractor's PWS and CWBS will be inserted into the Government's task order at the time of task order award.)

AR 848-49 (emphasis added).

Similarly, the RFTOP called for offerors to explain how they would replace USAID's existing acquisition and assistance computer software. AR 853. Specifically, the RFTOP noted:

> Strategic Objective: USAID seeks to replace its current suite of acquisition and assistance systems in accordance with USAID's enterprise architecture to:
>
> – Support USAID's acquisition and assistance function used for contracts and grants world-wide,
> – Integrate COTS packages from various vendors generally; and integrate these acquisition and assistance systems (specifically) with USAID/DoS accounting systems, Federal Procurement Data System (FPDS), and other important e-gov initiatives (Integrated Acquisition Environment, e-grants, and e-authentication etc.)
> – Operate reliably in the face of low bandwidth and unreliable WAN circuits, and
> – Provide security compliance with applicable Federal laws and regulations.

AR 853. Further, that the successful offeror would be required to procure COTS software for both USAID and the State Department was equally explicit:

> Should the Government [choose to] exercise all or part of the option, <u>the contractor shall furnish the necessary</u> technical personnel, materials, equipment, <u>commercial off-the-shelf (COTS) software</u>, system

> software, telecommunications, facilities, and related services required to provide the Government with the Government-approved support.

AR 857 (emphasis added).

Accordingly, the "crux" of plaintiffs' case is a challenge to the terms of USAID's task order solicitation, which explicitly contemplated the use of the task order to allow the awardee to procure commercial off-the-shelf software. Here, DSI and STR have not and cannot allege that either was an actual or prospective offeror for the USAID task order award, and they are thus unable to establish standing to challenge the terms of that task order solicitation and award. This Court has clearly held that subcontractors of offerors, which are not themselves actual or prospective bidders, are not "interested parties" within the meaning of CICA and the Tucker Act. Eagle Design & Management, Inc. v. United States, 62 Fed. Cl. 106, 108-09 (2004) (holding that prospective subcontractor did not have standing to bring post-award bid protest). Accordingly, DSI and STR have failed to establish that this protest is connected with a Federal procurement for which they have standing to challenge. Accordingly, this litigation should be dismissed.

### C. DSI and STR Cannot Allege Violations Of A Statute Or Regulation For Which They Are Interested Parties

Further, even assuming that they were "connected" at all,

the only violations of law or regulation alleged by DSI and STR are alleged violations that were "connected" to the competition and award of USAID's task order. As we established above, the third prong for Tucker Act jurisdiction requires not only that a protestor allege claims that are connected to a Government procurement, but that they allege a violation of statute or regulation in connection with that Government procurement. In their opposition brief, DSI and STR baldly allege that the Government violated regulations pertaining to conflicts of interest and "bundling" in the decision to award SRA the responsibility to provide commercial off-the-shelf software. However, as we established in our initial brief, those decisions were made when the Government decided to compete and award the Prime 2.2 Task Order in 2003. Because DSI and STR were not one of the nine GWAC awardees that were eligible to compete for the task order, DSI and STR cannot allege that they were actual or potential bidders for this task order and, accordingly, they cannot establish "interested party" status for the purpose of jurisdiction. Indeed, even if DSI and STR were interested parties, three years have passed since the award of the task order, which renders any such protest clearly untimely. AR 841.

DSI and STR also allege that requiring SRA to develop and integrate both acquisition and assistance, i.e., "grants," software constituted illegal bundling in violation of the Small

Business Act, 15 U.S.C. § 631(j)(3). Compl. ¶ 39; Pl. Opp. at 40. As we established above, the RFTOP explicitly provided that the Government intended to have offerors replace existing acquisition and assistance software and offerors were informed that they should explain how they would develop and integrate both acquisition and assistance software. AR 853. Because DSI and STR were not interested parties in the competition and award of the task order, they lack standing to assert a Tucker Act claim, alleging that the RFTOP and task order award involved illegal bundling.

Lastly, even if they could be construed to be interested parties, DSI and STR long ago waived any "defective solicitation" claim arising from the RFTOP, including bundling. This Court has adopted the GAO rule that protests based upon alleged improprieties or errors in a solicitation must be submitted prior to bid opening date. See Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 358 (1994), aff'd 39 F.3d 1198 (Fed. Cir. 1994); see also ABF Freight System Inc. v. United States, 55 Fed. Cl. 392, 399-400 (2003). Both DSI and STR have failed to allege that they submitted a protest or bid for the original GSA Millenia Contract or for the PRIME 2.2 Task Order and, accordingly, they cannot have standing to challenge the terms of those solicitations.

## CONCLUSION

For the reasons that we established here and in our initial brief, we respectfully request that the Court dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/ Kent G. Huntington
KENT G. HUNTINGTON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-9369
Facsimile: (202) 353-7988

OF COUNSEL:
WARREN D. LEISHMAN
PETER YOUNG
USAID
Office of General Counsel
Ronald Reagan Building
Room 6.6.064
1300 Pennsylvania Ave., NW
Washington, DC 20523
Telephone: (202) 712-5019

December 14, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on December 14, 2006, a copy of foregoing “DEFENDANT’S REPLY TO PLAINTIFFS’ OPPOSITION TO OUR MOTION TO DISMISS” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Kent G. Huntington