# In the United States Court of Federal Claims

No. 06-466 C

(Filed May 21, 2007)

| | | |
|---|---|---|
| DISTRIBUTED SOLUTIONS, INC, AND STR, L.L.C. Plaintiffs, v. THE UNITED STATES, Defendant. | * | Procurement protest; jurisdiction; subcontractors. |

## OPINION

*Thomas A. Coulter*, Richmond, Virginia, for plaintiffs.

*Kent G. Huntington,* Department of Justice, Washington D.C., with whom were Assistant Attorney General *Peter D. Keisler*, *David M. Cohen*, Director, and *Kathryn A. Bleecker*, Assistant Director, for defendant. *Warren D. Leishman* and *Peter Young*, USAID, of counsel.

**Merow**, *Senior Judge*.

Plaintiffs, after having their protests dismissed by the General Accountability Office ("GAO"), bring this action as a post-award procurement protest pursuant to 28 U.S.C. § 1491(b)(1). Defendant, after filing an administrative record ("AR"), contests the court's jurisdiction over this matter by filing a Motion to Dismiss. Plaintiffs oppose Defendant's Motion to Dismiss and move for supplementation of the administrative record.

# FACTS

This litigation has its genesis in a program initiated by the Department of State ("DoS") and the United States Agency for International Development ("USAID") to improve strategic planning and coordination between these federal agencies. The development of a common computer platform for acquisition and assistance systems was contemplated. The program was entitled the Joint Assistance and Acquisition Management System ("JAAMS"). USAID was designated the lead agency for this joint program. The JAAMS program was, in turn, split into two projects. First, the Joint Assistance Management System ("JAMS") was to deliver a joint assistance system for USAID and DoS. Second, the Procurement System Improvement Project ("PSIP") was to deliver an acquisition system for USAID.

The General Services Administration ("GSA") awarded a Millennia Government Wide Acquisition Contract ("GWAC") comprising Indefinite Delivery/Indefinite Quantity ("IDIQ") contracts with nine prime contractors to provide technical services and support for Information Technology ("IT") in three concentrated areas: software engineering/management, communications, and/or systems integration. (AR 760.) Systems integration under the GSA Millennia GWAC Contract included "[a]cquire or develop hardware, software, applications, interface, and connectivity components" and "[i]ntegrate all components." (AR 762.) Government agencies could issue task orders to obtain these services under the GSA Millennia GWAC.

In November 2003, USAID issued a task order, under the GSA Millennia GWAC, for IT integration support services. This task order was entitled "Principle Resource Information Management Enterprise-Wide 2.2" or "PRIME 2.2." (AR 178-91.) The order was to SRA International, Inc. ("SRA") one of the nine prime contractors comprising the GSA Millennia GWAC. (AR 124, 174.) Included in the work required by the task order was to "[s]upport USAID's acquisition and assistance function used for contracts and grants worldwide." (AR 186.) Also required was integration of commercial off-the-shelf packages from various vendors generally and the integration of these acquisition and assistance ("A&A") systems with USAID and DoS accounting systems, Federal Procurement Data System, and other e-gov initiatives. (*Id.*)

In June of 2005, USAID, assisted by SRA, developed and issued a Request for Information ("RFI") soliciting vendor responses "for market research purposes only." (AR 16, 170, 175, 263.) It was specified that "this RFI will not result in a contract award." (AR 16.) The RFI noted that "USAID and State are engaged in a joint initiative to modernize the acquisition and assistance process," and provided an overview of both organizations as well as a description of "[t]he collaborative initiative by each to use a common platform to separately implement a comprehensive acquisition and assistance management system." *Id.* The purpose for the RFI was "to research possible commercial off-the-shelf (COTS) Acquisition and Assistance (A&A) solutions for JAAMS." *Id.* Consistent with the notification that the RFI was for market research and that no contract would be awarded, the document did not contain evaluation criteria, but provided that vendors perform "a self-assessment of the ability of their COTS product(s) to satisfy the JAAMS requirements." (AR 27.) Vendors also provided a three-hour presentation and the RFI stated that, "[t]he JAAMS Team will review the results of the vendor self-assessments and the presentations to determine the next course of action for the JAAMS effort." (*Id.*)

On August 12, 2005, USAID posted the following notice concerning its June RFI:

> The Government has completed its review of the Joint Acquisition and Assistance Management System (JAAMS) responses to the Request for Information (RFI) for a Commercial-Off-the-Shelve [sic] (COTS) Acquisition and Assistance (A&A) System. Based on the results of the reviews and demos, the Government has decided to pursue alternative courses of action. The Government sincerely thanks all vendors that participated by submitting responses to the RFI and conducting demos.

(AR 639.)

The review of the responses to the June 2005 RFI resulted in a determination by USAID that "[b]ased on the complex business and technical environment, SRA, the current Prime 2.2 systems integrator, would be used to integrate the four primary Acquisition and Assistance functions which includes Grants administration, and eCatalog, Simplified Purchases, and Large Contracts Management functions as part of Procurement administration." (AR 170, 263.) SRA was tasked to obtain software for these functions from vendors. (AR 170, 175, 263.)

On August 12, 2005, SRA issued a RFI "to collect information on the following types of commercial-of[f]-the shelf (COTS) product(s):

- a single assistance system for State and USAID,
- an acquisition system for USAID, and
- an e-catalog system for USAID."

(AR 292.) The RFI noted that:

> SRA presently holds the USAID Prime 2.2 task order under its Millenia contract with GSA FEDSIM. Accordingly, SRA hereby requests information from selected vendors to obtain more detailed information on commercially available acquisition and assistance (A&A) system(s) or combinations thereof, to satisfy USAID and State's requirements.

*Id*. Information as to the status of a selected product vendor was provided as follows:

> The selected product vendor(s) may serve as subcontractors to the current USAID system integrator, SRA International, Inc. (SRA) under the PRIME 2.2 contract. In this role, the subcontractor will provide software product(s) and services to support the integration effort as requested and funded under the direction and management of SRA.
>
> Information collected from this Request may lead to the selection of the product(s) for a JAAMS solution. The product(s) recommendation is anticipated by September 30, 2005 and implementation will begin immediately thereafter. Further details of the implementation schedule will be made available once the product(s) selection is made.

(*Id*.)

The RFI issued by SRA set forth the factors on which vendor responses would be evaluated. (AR 175, 303.)

Plaintiff, STR, L.L.C. ("STR"), had submitted and demonstrated its "e Grants Plus®" application software as a solution for the JAAMS program, in response to the RFI issued by USAID in June. (Compl. Ex. 2.) Plaintiff, Distributed Solutions, Inc. ("DSI") had also submitted and demonstrated its Automated Acquisition Management System in response to the June RFI as a solution for the JAAMS program. (Comp. Ex. 3.) Both plaintiffs also responded to the RFI issued by SRA on August 12, 2005. (Compl. Ex. 6, 8.) Representatives from USAID, DoS and SRA convened to review the vendors' responses to the RFI issued by SRA. (AR 126, 737.) The vendors selected were Infoterra for JAMS development and Compusearch for the PSIP solution. (AR 126, 736, 749.)

On November 9, 2005, SRA executed a subcontract with Infoterra for "work in support of the U. S. Agency for International Development (USAID) and the U. S. Department of State (State) under the PRIME 2.2 Joint Assistance Management System (JAMS) project." (AR 647.) The statement of work in the subcontract noted "[t]he cooperative team of USAID, SRA and the subcontractor will integrate the Software. However, only SRA is authorized to direct the subcontractor with respect to the obligations, responsibilities, terms, and conditions of the subcontract awarded." (*Id.*) Payments on the subcontract were to be made by SRA after SRA obtained approval from USAID. (AR 658-59.)

On February 1, 2006, SRA executed a subcontract with Compusearch Software Systems, Inc. for work "in support of the U. S. Agency for International Development (USAID) under the PRIME 2.2 Procurement System Improvement Project (PSIP)." (AR 709.) The statement of work stated that "[t]he cooperative team of USAID, SRA and the subcontractor will integrate the software. However, only SRA is authorized to direct the subcontractor with respect to the obligations, responsibilities, terms, and conditions of the subcontract awarded." (*Id.*) Payments on the subcontract were to be made by SRA. (AR 685-86.)

The Infoterra and Compusearch subcontracts each provided that "[t]his Subcontract shall be construed, governed and interpreted in accordance with the laws of the Commonwealth of Virginia, without regard to its conflicts of laws provisions provided; however, that the statutory and other requirements applicable to Federal Government procurement shall be interpreted in accordance with the decisions of applicable federal courts and boards of contract appeals in lieu of state law." (AR 675, 690.) The subcontracts also provided that any claim, controversy, or dispute

arising under the subcontracts which could not be settled amicably shall be settled by arbitration in accordance with the Rules of the American Arbitration Association then in effect. (AR 674, 688.) No direct appeal by a subcontractor to USAID or DoS was provided in the subcontracts.

On October 13, 2005, STR filed a protest with the GAO addressed to the selection of Infoterra for the JAMS development work. On November 18, 2005, DSI filed a protest with the GAO addressed to the selection of Compusearch for the PSIP project work. By decisions issued December 22, 2005 (B-297421) and January 25, 2006 (B-297421.2), the protests were dismissed because "the procurement here was not 'by' the government . . ." (AR 242) and "the procurement at issue was not conducted by a federal agency or a contractor acting as a procurement agent for a federal agency and thus is not subject to our jurisdiction." (AR 282.) This litigation then ensued.

## DISCUSSION

Defendant's Motion to Dismiss raises the question whether the circumstances detailed above encompass a viable procurement protest, concerning a Federal agency solicitation or contract award, within the jurisdiction afforded to this court under 28 U.S.C. § 1491(b). Analyzing the several steps in the software procurement involved, defendant argues that no such viable protest has been established in that plaintiffs are essentially protesting the award of subcontracts by a contractor with a Federal agency, not a contract award by a Federal agency. Plaintiffs, in response, argue for an expansive interpretation of 28 U.S.C. § 1491(b) to encompass the process which resulted in competition for the award of subcontracts rather than the award of Federal agency contracts.

The GSA Millennia GWAC contract for which USAID issued the PRIME 2.2 task order in November, 2003, encompassed the acquisition of software and its integration. USAID could have initially included the JAAMS program software requirements for procurement by SRA under PRIME 2.2. However, USAID first proceeded to conduct market research by issuing a RFI, noting that a contract award

would not result.[1/] Information was sought as to possible commercial off-the-shelf software products to develop a common platform for USAID and DoS acquisition and assistance management systems. Plaintiffs responded to the RFI.[2/]

Often, after obtaining market research by issuing an RFI, a Federal agency will then issue a Request for Proposals to commence acquisition of the requirements involved. *See, e.g., Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1299-00 (Fed. Cir. 1996). However, after obtaining responses to its RFI, USAID added its JAAMS software requirements to the existing PRIME 2.2 task order held by SRA. Plaintiffs argue that this act raises a viable protest under 28 U.S.C. § 1491(b). However, adding work to an existing contract that is clearly within the scope of the contract, which is the circumstance present here, does not raise a viable procurement protest based on lack of competition. *AT&T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d 1201 (Fed. Cir. 1993); *HDM Corp. v. United* States, 69 Fed. Cl. 243, 254 (2005); *Phoenix Air Group, Inc. v. United States*, 46 Fed. Cl. 90, 105 (2000).

SRA proceeded to procure the software by means of executing subcontracts with the selected vendors, Infoterra and Compusearch. Plaintiffs' subcontract proposals, submitted to SRA, were not chosen. Plaintiffs argue that the award of subcontracts by SRA to Infoterra and Compusearch raise viable procurement protests, within the ambit of 28 U.S.C. § 1491(b), in that it is asserted that SRA was operating

---

[1/] FAR 15.202(e) provides:

> (e) RFI may be used when the Government does not presently intend to award a contract but wants to obtain price, delivery, other market information, or capabilities for planning purposes. Responses to these notices are not offers and cannot be accepted by the Government to form a binding contract. There is no required format for RFIs.

[2/] Plaintiffs now assert that the JAAMS program in combining the separate USAID and DoS acquisition and assistance management systems in one software procurement runs afoul of contract bundling restrictions expressed in 15 U.S.C. § 631(j) and § 632(o)(2). However, the purpose for the JAAMS program and the PRIME 2.2 task order was the development of a common computer program. As such, any "bundling" would have occurred in this 2003 procurement in which plaintiffs did not participate and, therefore, have no standing to protest. Moreover, the USAID market research RFI sought information as to COTS products which might serve the JAAMS program. Plaintiffs in their responses did not assert any "bundling" objection. It is concluded that no viable "bundling" objection is present in the circumstances involved in this software procurement, and no party here has standing to raise the issue.

as a purchasing agent for USAID in these transactions so that a Federal agency procurement actually occurred. USAID and DoS officials did substantially participate in the evaluation of vendors submitting proposals to SRA and the resulting choice of Infoterra and Compusearch for SRA subcontracts, but the terms of the subcontracts belie purchasing agent status for SRA. There is no direct USAID or DoS liability to the vendors. SRA retained the sole responsibility to direct the vendors in their work under their subcontracts and payments to the subcontractors were to be made by SRA. Pursuant to the test established by *US West Communications Services., Inc. v. United States*, 940 F.2d 622, 629-30 (Fed. Cir. 1991) and *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1551 (Fed. Cir. 1983), SRA cannot be relegated to purchasing agent status in its subcontracting activity under the PRIME 2.2 task order. As a result, the subcontracts at issue were not awarded by, or on behalf of, a Federal Agency.

Accordingly, in accord with the decision reached by the GAO on plaintiffs' protests, it is also concluded that a Federal agency procurement is not at issue in this matter. Since 28 U.S.C. § 1491(b) provides procurement protest jurisdiction to this court over procurements by Federal agencies, disappointed subcontractors are not afforded protest rights. *Blue Water Envtl., Inc. v. United States*, 60 Fed. Cl. 48 (2004). Plaintiffs seek additional documents and propose issues, such as possible conflict of interest considerations in the award by SRA of the subcontracts concerned. These issues could merit inquiry if jurisdiction were present, but judicial action must remain within the boundaries established by statute. Enlarging these boundaries is the province of Congress, not this court.

Accordingly, it is **ORDERED** that:

(1) Plaintiffs' Motion to Supplement the Administrative Record is **DENIED**;

(2) Defendant's Motion to Dismiss is **GRANTED**;

(3) Judgment shall be entered for the United States with each party to bear its own costs.

s/ James F. Merow
James F. Merow
Senior Judge