# In the United States Court of Federal Claims

No. 06-466 C

(Filed August 24, 2011)

```
*************************************
DISTRIBUTED SOLUTIONS, INC, AND      *
      STR., L.L.C.                   *
                  Plaintiffs,        *
                                     *
            v.                       *
                                     *
THE UNITED STATES,                   *
                  Defendant.         *
*************************************
```

## ORDER

     In considering the briefs and argument of counsel in this matter, further input is requested, particularly to address plaintiffs' standing. Jurisdiction over non-frivolous allegations of statutory and regulatory violations in connection with the government "choosing to forego the direct competitive procurement process and tasking SRA with the responsibility of selecting software vendors indirectly" was established. *Distrib. Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008). The merits of those violations alleged remains. *Id.* at n.1 (citing *CCL, Inc. v. United States*, 39 Fed. Cl. 780 (1997)). Plaintiffs' standing to assert the merits of those violations, however, is a jurisdictional predicate. *See ICP Nw., LLC v. United States*, 98 Fed. Cl. 29, 35 n.10 (2011).

     Accordingly, the parties are requested to submit supplemental memoranda in support of their respective Motion and Cross-Motion for Judgment on the Administrative Record, Motion to Dismiss and Motion to Strike (ECF Nos. 77, 79, 94) on the following issues:

     1. Whether plaintiffs have standing and made an adequate showing that they suffered, or at the time of the decisions assailed were likely to suffer (and which is the appropriate benchmark) prejudice as a result of each of the statutory and regulatory violations alleged, *see ICP Nw.*, 98 Fed. Cl. at 35-36, and have made an adequate showing that they "possess[ed] the requisite direct economic interest,"

*Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1363 (Fed. Cir. 2009), *i.e.*, that they suffered "a non-trivial competitive injury" that can "be addressed by judicial relief," *id.* at 1363, and the applicability of any other standards in this regard. The foregoing should be given with specificity for each violation asserted with supporting record references.

    2. Are the standards to be applied for pre- or post-award or does it matter?

    3. Does the administrative record demonstrate that the software awards, by means of SRA subcontracts, would have been conducted significantly different if USAID and DoS had purchased directly with the advice of SRA as they apparently did subsequently?

    4. At what point(s) in the procurement process is prejudice, injury or harm determined? While the protestable decision was the government's decision to forego the direct competitive procurement process, and tasking SRA with the responsibility of contracting with the software vendors, can competitive or other injury be measured later in the procurement process, *i.e.*, in the conduct, evaluation and award of the subcontracts?

    5. Provide any analogous cases, government procurement or otherwise, examining a government procurement process that was commenced and then tasked to a private contractor within the scope of an existing contract or other acquisition vehicle.

    6. Would the awards of software contracts following an RFI comprise a violation of any applicable procurement law and if so, what would be required to comprise prejudice in this situation?

    7. Was there an inability to protest SRA's RFI and award process, and/or the denial of debriefing, and if so, does this comprise prejudice such as to establish required standing/non-trivial competitive injury?

    8. Clarify positions concerning pricing requirements or the lack thereof in the SRA RFI, the Source Selection documents and the evaluation of vendors as related to the decision to task SRA with the purchase rather than proceeding with direct

procurement by USAID/DoS. *See Schoenbrod v. United States*, 187 Ct. Cl. 627, 410 F.2d 400 (1969).

      9. Explain, with record references, the evolution from SRA's RFI to the subcontract awards.

      10. Explain, with record references, any requirements in SRA's RFI that the software systems offered had to be "based on a mature, fully developed system that is already in production in other Federal agencies," (AR 292), and whether that requirement was met. If not, would the failure to adhere to the requirements of a solicitation (assuming *arguendo* that the RFI was a "solicitation") provide requisite prejudice relating to the decision to task SRA with the purchase instead of direct procurement by USAID/DoS?

      11. Is it admitted that the decision to use an integrator was not arbitrary and capricious? Clarify the bundling argument; were plaintiffs precluded from offering both acquisition and assistance software systems?

      12. Is a violation of, or failure to comply with, a procurement-related statute or regulation prejudicial *per se* in the context presented given that plaintiffs "have established themselves as potential bidders in that they submitted qualifying proposals in response, and according to their complaint were prepared to submit bids pursuant to the anticipated Request for Quotation (RFQ) or Request for Proposal (RFP) that typically ensues after an RFI is issued?" *Distrib. Solutions*, 539 F.3d at 1345.

      13. The government's August 12, 2005 Source Selection Plan includes a provision that the "source selection evaluation team (SSET) will adhere to the principles in FAR Subpart 15.3" based on evaluation factors "described in the solicitation to be issued by the Prime 2.2 integrator." (AR 1108, ECF No. 78-8: AR 1124, ECF No. 78-10.) With specific references to the administrative record, describe how the evaluations and subsequent selection and subcontract awards did or did not adhere to these provisions. How would the CICA competition plaintiffs seek have been any different if the government had procured the software directly with the advice of an integrator that would also integrate the selections?

14. Can standing in this regard be established by non-trivial violation of procurement law or regulation of significance to the integrity of the government procurement process?

15. What are the ramifications, if any of *Turner Constr. Co. Inc. v. United States*, 645 F.3d 1377 (Fed. Cir. 2011)?

16. The Competition in Contracting Act provides in relevant part that:

> an executive agency in conducting a procurement for property or services –
>    (A)  shall obtain full and open competition through the use of competitive procedures in accordance with the requirement of this title and the Federal Acquisition Regulation[s.]

41 U.S.C. § 253(a)(1)(A).

If such competitive procedures were required, and were employed in the SRA procurement for the software involved, did any specific actionable prejudice result?

The parties are requested to file supplemental memoranda on or before **September 26, 2011**. After reviewing the opposing party's submission, by motion, filed within seven days after the filing date of the memoranda, either party may request an opportunity to respond.

It is so **ORDERED**.

    s/ James F. Merow
    James F. Merow
    Senior Judge